*582

JAMES BELL *v.* CHARLES ROBERTS.

The statute of 1837, in relation to informal or irregular levies of executions, includes all such informalities or irregularities as would render the levy doubtful, or even bad, but not extending to the subject matter of the levy. It includes such levy as merely neglects to state that the justice, appointing the appraisers, was qualified to judge between the parties.

That the statute is retrospective, in relation to levies previously made, does not render it unconstitutional.

The operation of the statute does not constitute an entire defence to the officer making a defective levy.

TRESPASS on the case against the defendant, as sheriff of Caledonia county, for the neglect of one of his deputies in making a defective levy of an execution, in favor of the plaintiff against one Sinclair, upon land of the said Sinclair, which levy was made on the nineteenth day of March, 1836, and the defect complained of was, that the return of the deputy did not show that the justice of the peace, who appointed the appraisers, could, by law, judge between the parties.

Plea, not guilty, and trial by jury.

On the trial in the county court, the plaintiff introduced a copy of the record of the levy of the execution, and the defect complained of appeared from said copy, and rested his case.

The defendant requested the court to direct the jury to return a verdict for the defendant, on the ground that, by virtue of the statute, passed October 31, 1837, and the statute, passed November 10, 1835, relating to the levy of executions, the title of the plaintiff to the estate levied upon became perfect, although the levy was defective and bad; Whereupon, the county court directed the jury to return a verdict for the defendant. The jury so returned their verdict and the plaintiff excepted to the decision and charge of the county court.

The statute of October 31, 1837, relied upon by the defendant, provides that in all cases where any writ of execution had been, or should thereafter be, extended on real estate, and the levy was or should be "irregular, informal, or in any way not made according to the strict rules of law, so that

the title derived therefrom shall be deemed doubtful or uncertain," the supreme court, on petition of either party, at any time within two years after the passing of the act, or within two years after making the levy, might annul such levy. "for any such defect, illegality, want of form or irregularity therein," and issue execution anew. And if neither party within the two years, made such application, then the levy should be valid to convey all the title and interest which the judgment debtor had, at the time of the levy, in the estate levied upon.

The writ, in this case, was served upon the defendant on the seventeenth of March, 1839.

*C. Davis*, for plaintiff.

I. The levy, in this case, is confessedly bad, as the officer has not returned that the magistrate, who appointed appraisers, could judge between the parties. This action is, therefore, sustainable against the officer. *Day & Co.* v. *Roberts*, 8 Vt. R. 413.

The defendant contends that plaintiff's title, by virtue of the acts of October 31, 1837, or of November 10, 1835, or both, had become perfect, before the bringing of this suit, or since, and thence infers that our action cannot be sustained, even for nominal damages. We think the first proposition is not made out; but, if it is, we especially protest against the conclusion.

II. Our title has not become perfect, because this case is not within the statute, which applies only to cases where the levy leaves the title *doubtful* or *uncertain.* Here it was entirely bad. *Dodge, Adm'r.* v. *Prince et al.*, 4 Vt. R. 191. If we err in this, to construe the act of 1837 as having a retrospective operation, so as to make our title valid at the end of two years from the levy, and before the bringing of the action, would be unconstitutional, by disturbing the vested rights of the debtor, his heirs, grantees or creditors. 1 Kent's Com. 4 ed. 455, and the cases cited in note. 7 Johns. 477. *Johnson* v. *Ten Eyck et al.*, 5 Cowen, 346. *Jackson* v. *Wright*, 4 Johns. 79. *Jackson* v. *Lyon*, 9 Cow. 669. *The People* v. *Platt*, 17 Johns. 195.

If the defendant chooses to construe the act as operating to give us a good title in two years from the time it took ef-

CALEDONIA,
March,
1841.

Bell
*v.*
Roberts.

fect, then we not only had a good cause of action as soon as the levy was made, but also when the suit was commenced, and to take away this vested right would be unconstitutional. The act of 1835 cannot aid the defendant, as it was repealed before the lapse of two years under it would perfect our title. When repealed, it was as if it never had existed. The time passed under it cannot be prefixed to the time under the last act. The two acts are wholly independent and unconnected, and were, besides, dissimilar in their provisions.

III. But if the plaintiff's title has become valid since the levy, no matter when, the right of action which instantly accrued for damages, cannot be defeated by lapse of time, or legislative enactments, *ex post facto.*

The amount of damages may be effected by this result, but not the right altogether. Nothing in the act touches on the subject of damages, or the right to sue. If the right of action, once accrued, could be taken away, constitutionally, by an act of the legislature, which we deny, no such thing is attempted by the act in question. It is no necessary consequence of the perfection of our title, especially when costs have accrued. This point is fully settled in *Garfield* v. *Williams,* 2 Vt. R. 327, which is perfectly analogous to the present, upon the most unfavorable construction which can be given to the act, viz; that which supposes our title to have become perfect before suit commenced.

*J. R. Skinner,* for defendant.

I. The object of the levy of an execution is to transfer whatever right the debtor may have in the land, to the creditor; and however defective the levy may be, if, by the provisions of the statute, the creditor obtains that *right,* he has no cause of complaint, in this form of action, unless he shows some special damage, which the plaintiff necessarily fails to do in this suit, as the statute had quieted the title before suit commenced; or, if the statute of 1835, does not apply to this case, there being no evidence of the creditor's possession, the statute of 1837 intervening before plaintiff commenced his suit, and more than two years before trial, supercedes all other remedies. *Adm'r. of Royce* v. *Strong,* 11 Vt. R. 248.

II. When different statutes relate to the same thing, and are made in *pari materia*, they should all be taken together, in the construction of any one of them, and considered as one statute. Plowden, 206. 1 Burr. 447.

The statutes of 1835 and '7, are to be construed in relation to the subject matter, and it is evident the legislature intended the remedy therein pointed out, as embracing the only course to be pursued in case of any defect in the levy.

The opinion of the court was delivered by

COLLAMER, J.—This is an action against an officer for an insufficient levy of an execution on land, the return not stating that the justice, who appointed the appraisers, was one who could judge between the parties. The first question is, does the statute of 1837 include such defect. The statute of 1837 relates to levies " *irregular, informal, or not made according to the strict rules of law, so that the title shall be deemed doubtful or uncertain.*" This would not, probably, include a levy defective, in substance, as to *the subject matter ;* as a levy on the wrong land, or a levy by metes and bounds on a part of the undivided interest of a tenant in common, or a levy on land instead of the equity of redemption, or the rents and profits. But the statute includes all matters of form, and it will not do to say that if the matter be such as, by the decisions of our courts, would render the levy defective without the statute, then it is not within it, because it is not *doubtful* or *uncertain.* So to hold would render the statute useless ; for if it was matter which would not avoid the levy, it required no statute, but was well enough already. The defect in this levy related entirely to the *mode and form*, and not to the *subject matter*, and is clearly within the statute of 1837.

The statute, in terms, includes all levies previously made, and gives two years for proceedings in relation thereto, and quiets them thereafter.

Was that *unconstitutional ?* Statutes which regulate the forms, modes and times of remedies, do not violate the obligation of contracts, and are not unconstitutional, though they are retrospective in their operation. Existing demands, claims and rights are constantly subject to the operation of new statutes, regulating the jurisdiction of courts,

and changing the time and form of process and proceeding. Such is the character and effect of this statute. Before this act, the only mode of testing the regularity of a levy was by an action of ejectment, which might be brought within fifteen years. By this act the proceeding is to be by petition and to be commenced within two years. It disturbs no vested rights, and impairs the obligation of no contract.

By the statute of 1837, the plaintiff's title became quieted in January, 1840, which was after the commencement of his present action. Did that constitute a defence? The duty of the officer to make a regular and sufficient levy and return, is the same as before the statute. The action accrues against the sheriff immediately on the breach of that duty, and the plaintiff was entitled to recover whatever damages he suffered therefrom. *Hall* v. *Tomlinson*, 3 Vt. R. 228. Under the old law, the plaintiff would commonly recover the amount of the debt or land, which was usually lost by the defective levy. Under the present statute, the creditor must be at the expense of taking proceedings in court to correct the levy, or he must lay out of the use of the land two years, that his title may become quieted; as he cannot successfully assert his title, by ejectment, until his title has become perfected by one of those courses. The neglect of the officer then is not, even under the operation of the statute of 1837, *damnum absque injuria*. The cause should have gone to the jury to assess the damages.

Judgment reversed.