[No. 2827. Decided April 9, 1898.]

# DAVID BETTMAN, *Appellant*, v. H. T. COWLEY, *Respondent.*

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — ACTION ON JUDGMENTS.

The act entitled "an act relating to the duration of judgments," etc., (Laws 1897, p. 52; Bal. Code, §§ 5148-5150), providing that liens on judgments shall expire six years after their rendition, and that no action shall be had on any judgment rendered in the state by which its lien shall be extended for a greater period than six years from the date of entry of the original judgment, is unconstitutional as to existing judgments on the ground that it is an impairment of the obligation of contracts. (REAVIS and GORDON, JJ., dissent.)

Appeal from Superior Court, Spokane County.—Hon. WM. E. RICHARDSON, Judge. Reversed.

*Will G. Graves*, for appellant.

*Blake & Post*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action upon a judgment. Service of the summons and complaint was made, default of the respondent was noted and judgment entered against him on August 23, 1897. Thereafter respondent moved to set aside the default and judgment entered against him, which motion was sustained. It is stipulated that the respondent has no defense to the action other than the act of the legislature of 1897, approved March 6, 1897 (Laws 1897, p. 52; Bal. Code, §§ 5148-5150), entitled, " An act relating to the duration of judgments and repealing sections 462 and 463, volume 2, Hill's Code of Washington." The act is as follows:

" Section 1. After the expiration of six years from the rendition of any judgment it shall cease to be a lien or charge against the estate or person of the judgment debtor.

" Sec. 2. No suit, action, or other proceedings shall ever be had on any judgment rendered in the State of Washington by which the lien or duration of such judgment, claim or demand, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment.

" Sec. 3. When the lien of any judgment, as specified in section 1 of this act, has run six years, or its duration will be less than one year by reason of this act, then the lien of such judgment shall continue for one year from and after the taking effect of this act.

" Sec. 4. Sections 462 and 463 of volume 2, Hill's Code of Washington, relating to a renewal of judgments, are hereby repealed."

And it is claimed that the act is unconstitutional as applied to judgments in existence at the time of the passage of the act. It is also contended by the appellant that the title of this act is not sufficient in that it embraces more than one subject, and the subject is not expressed in the title of the act. We do not think there is any substantial merit in this objection. In presenting our views in relation to the constitutionality of the act, it is not necessary to pass upon the other objections raised by the appellant. It is contended by the appellant that the application of this law to judgments already in existence is violative of § 10 of art. 1 of the constitution of the United States, and of § 23 of art. 1 of the constitution of the state of Washington, in that it is a law which impairs the obligation of contracts; and of art. 5, and of § 1 of art. 14 of the constitution of the United States, and of § 3 of art. 1 of the constitution of the state of Washington, in that it would deprive the appellant of his property without due process of law. We think that in any event, as applied to contracts existing at

the time the law was enacted, its enforcement would be an impairment of such contracts. It is insisted by the respondent that the United States supreme court has decided this question adversely to appellant's contention in *Morley v. Lake Shore & M. S. Ry. Co.*, 146 U. S. 162 (13 Sup. Ct. 54), in that it has decided that a judgment is not a contract, but we do not think that the court decided that contractual rights when merged into a judgment could not be enforced. The facts before the court must be ascertained to determine the principles of law which the court decides in a given case. The facts in that case were substantially as follows: An action was brought in the supreme court of New York by John S. Prouty against the Lake Shore & M. S. Ry. Co. *et al.*, to compel the specific performance of a certain contract. It was adjudged in January, 1878, that the company pay the plaintiff out of its net earnings $53,184.88, together with interest thereon from the entry of said judgment. It was also adjudged that if the company within the time specified failed to pay to the plaintiff the above specified sum and such interest, the plaintiff might have execution therefor against the defendant. By the statutes of New York in force when this judgment was rendered seven per cent. was the legal rate of interest. Afterwards, in 1879 the legislature reduced the rate of interest to six per cent. The question came up on the right of the legislature to reduce the rate of interest on a judgment rendered when the rate was higher, and the court held in substance that where a judgment is obtained on a contract which contains no provision for interest, the allowance for interest on the judgment is a matter within the legislative discretion, that the judgment is not a contract and the law reducing the rate of interest thereon does not impair the obligation of contracts within the meaning of the federal constitution. It simply was determined by the court that, in that case, where

the judgment did not arise out of contract, the interest which was allowed by the state was allowed as damages for the non-performance of a payment of the judgment—damages which the state had a right to estimate and enforce—that no contractual obligation existed so far as the question of interest was concerned, but that the interest allowed having been allowed by the state as damages, the amount of such damages was within the control of the state, and therefore no obligation was impaired. Even in that case there was a very able dissenting opinion by Justice HARLAN, which was concurred in by Justice FIELD and Justice BREWER, holding that it was not only an impairment of a contract, but that the judgment was property, and that the rate of interest which the judgment drew was properly within the meaning of the constitution, and that the constitution was violated by the changing of the rate of interest by the legislature. But it is not necessary in this case to go to the extent to which the dissenting judges did in the case just reviewed. Reference was made in that case to *Louisiana v. Mayor*, 109 U. S. 285 (3 Sup. Ct. 211), which shows that the court was considering, and considering only, judgments which did not arise out of contract, and had no element of contract in them, and this is one of the cases also relied upon by the respondent in this case. This was an action brought by the holders of judgments recovered in the courts of Louisiana for damages done to the property of the plaintiffs by a mob or riotous assemblage of people in the year 1873. A statute of the state made municipal corporations liable for damages thus caused within their limits. At the time the injuries complained of were committed the city of New Orleans was authorized to levy and collect a tax upon property within its limits of one dollar and seventy-five cents upon every hundred dollars of its assessed value. Afterwards, by the constitution of the state,

the power of the city to impose taxes on property within its limits was restricted to ten mills on the dollar of the valuation, and it was asserted that the effect of this last limitation was to prevent the relators, who were not allowed to issue executions against the city, from collecting their judgments, as the funds receivable from the tax thus authorized to be levied were exhausted by the current expenses of the city, which must first be met, and this action was to compel the authorities of the city to provide for the payment of these judgments by a levy of an additional tax. Judge FIELD, in writing the opinion of the court in this case (and it may be noted that he was one of the judges who dissented in the *Morley case*, and therefore it cannot be concluded that he intended to lay down a doctrine which would be opposed to the doctrine of the dissenting opinion, viz., that the judgment was property, the taking of which without due process of law would fall within the inhibition of the constitution), said:

"The right to reimbursement for damages caused by a mob or riotous assemblage of people is not founded upon any contract between the city and the sufferers. Its liability for the damages is created by a law of the legislature, and can be withdrawn or limited at its pleasure. Municipal corporations are instrumentalities of the state for the convenient administration of government within their limits. They are invested with authority to establish a police to guard against disturbance; and it is their duty to exercise their authority so as to prevent violence from any cause, and particularly from mobs and riotous assemblages. It has, therefore, been generally considered as a just burden cast upon them to require them to make good any loss sustained from the acts of such assemblages which they should have repressed. . . . But, however considered, the imposition is simply a measure of legislative policy, in no respect resting upon contract, and subject, like all other measures of policy, to any change the legislature may see fit to make, either in the extent of the liability or in the

means of its enforcement. And its character is not at all changed by the fact that the amount of loss, in pecuniary estimation, has been ascertained and established by the judgments rendered. The obligation to make indemnity created by the statute has no more element of contract in it because merged in the judgments than it had previously."

And this was the sole ground upon which this case was decided. And as showing conclusively that a contractual relation would have compelled a different decision from this the opinion proceeds:

" The cases in which we have held that the taxing power of a municipality continues, notwithstanding a legislative act of limitation or repeal, are founded upon contracts; and decisions in them do not rest upon the principle that the party affected in the enforcement of his contract rights has been thereby deprived of any property, but upon the principle that the remedies for the enforcement of his contracts existing when they were made have been by such legislation impaired. The usual mode in which municipal bodies meet their pecuniary contracts is by taxation. And when, upon the faith that such taxation will be levied, contracts have been made, the constitutional inhibition has been held to restrain the state from repealing or diminishing the power of the corporation so as to deprive the holder of the contract of all adequate and efficacious remedy."

And the court cites approvingly the cases of *Wolff v. New Orleans*, 103 U. S. 358, and *Louisiana v. Pilsbury*, 105 U. S. 278, saying:

" In both cases by the unanimous judgment of the court, the legislation in that respect is subject to this qualification which attends all state legislation, that it ' shall not conflict with the prohibitions of the constitution of the United States, and, among other things, shall not operate directly upon contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement. Legislation producing this latter result, not indirectly as a consequence of legitimate measures

taken, as will sometimes happen, but directly by operating upon those means, is prohibited by the constitution, and must be disregarded—treated as if never enacted—by all courts recognizing the constitution as the paramount law of the land. This doctrine has been repeatedly asserted by this court when attempts have been made to limit the power of taxation of a municipal body, upon the faith of which contracts have been made, and by means of which alone they could be performed."

Justice BRADLEY, in his concurring opinion, makes it especially clear that he concurred in the opinion simply upon the ground that

" Remedies against municipal bodies for damages caused by mobs, or other violaters of law unconnected with the municipal government, are purely matters of legislative policy, depending on positive law, which may at any time be repealed or modified, either before or after the damage has occurred, and the repeal of which causes the remedy to cease."

" But," said he, " an ordinary judgment of damages for a tort, rendered against the person committing it, in favor of the person injured, stands upon a very different footing. Such a judgment is founded upon an absolute right, and is as much an article of property as anything else that a party owns; and the legislature can no more violate it without due process of law, than it can any other property. To abrogate the remedy for enforcing it, and to give no other adequate remedy in its stead, is to deprive the owner of his property within the meaning of the Fourteenth Amendment. The remedy for enforcing a judgment is the life of a judgment, just as much as the remedy for enforcing a contract is the life of the contract."

So it will be seen from these cases, which are the principal and most pertinent cases cited on this question, not only by the opinions of the court, but also by the dissenting opinions in each case, that it was not the intention of the supreme court to lay down the rule that the destruction of a judgment in which a contract was merged by the legisla-

ture was not an impairment of the contract, and was not a deprivation of property within the meaning of the Fourteenth Amendment. But the supreme court has with uniformity spoken with no uncertain sound concerning the sacredness of contract rights, and of the protection of property under the constitutional guaranty referred to. These cases, without specially enumerating them, are many of them reviewed in the late case of *Barnitz v. Beverly*, 163 U. S. 118 (16 Sup. Ct. 1042), where the first quotation is from *Bronson v. Kinzie*, 1 How. 311, where the court, in discussing a question of what was a right and what was a remedy, said:

" Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution;"

citing, also, *McCracken v. Hayward*, 2 How. 608, where it was said:

" The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning. When it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law, which in its operation amounts to

a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution."

And as showing the construction which must have been placed by the court itself on the opinion in *Louisiana v. Mayor, supra,* the court in this case quotes approvingly the case of *Seibert v. Lewis,* 122 U. S. 284 (7 Sup. Ct. 1190), where it was announced that it was the settled doctrine of the court that:

" ' The remedy subsisting in a state, when and where the contract is made and is to be performed, is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void,' "

and that the legislature of Missouri having, by act of March 23, 1868, to facilitate the construction of railroads, enacted that the county courts should levy and cause to be collected in the same manner as county taxes a special tax in order to pay the interest and principal of any bond which might be issued by a municipal corporation in the state on account of the subscription authorized by the act to the stock of the railroad company, which tax should be levied on all the real estate within the township, making the subscription in accordance with the valuation then last made by the county assessors for county purposes, it must be held that it was a material part of this contract that such creditor should always have the right to the special tax to be levied and collected in the same manner as county taxes at the same time might be levied and collected. Here the action of the party came into effect. He entered into this contract on the strength of the law of the state of Missouri, and, having entered into it with reference to that law, the supreme court will not allow the state to pass any law which impairs that

obligation or in any way lessens the value of the contract. And in *Louisiana v. New Orleans*, 102 U. S. 203, Mr. Justice FIELD, in the opinion of the court, said:

" The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced — by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."

The language of the learned judge might well be applied in the interest of the appellant in this case. The means provided by the law for the enforcement of the contract at the time the contract was made and by which it could be enforced has been taken away by the legislature. The action of the legislature has not only tended to lessen the efficacy of the means which then existed, it has not only tended to retard the enforcement of the contract, but it has destroyed the means of its enforcement altogether, and has supplied no other means in its stead. It is the contention of the respondent, however, and indeed that is his main contention, that this act of the legislature is a statute of limitation in effect, and numerous cases are cited where statutes of limitation have been sustained, but we think there is a vast difference between the act in question here and the acts which were construed in the cases cited by respondent. The governing principle in this case is altogether different from the principle underlying statutes of limitation. Statutes of limitation are statutes of repose, intended to put at rest controverted questions of fact, to insure to a degree certainty in testimony by compelling its production before it is affected by the infirmities of memory, thereby giving value to contracts. Such statutes are in the interests of morals, serving to prevent perjuries, frauds and mistakes, hence they subserve public interests and fall with-

in the special authority of the legislature, which in the exercise of its discretion can regulate them, providing, always, that, where a statute of limitation is shortened, a reasonable time must be allowed to commence the action or present the claim. This constitutes no deprivation of a substantial right. It does not even change the remedy. It is a mere change in the time at which the remedy is to be applied, which can go no further than a possible inconvenience, and it is upon this theory that the shortening of the statutes of limitation are sustained. The creditor's rights are in nowise impaired. He is deprived of no remedy. His substantial right, viz., to collect his debt, remains. It is true he must reduce his claim to a judgment sooner than he was required to do, but when it is so reduced he can perpetuate his judgment, and the time for collecting the fruits of the judgment is not shortened. In this case, when the original judgment was obtained, the creditor had a right to perpetuate his judgment either by a suit on the same, or by keeping it alive under the provisions which the law under consideration repeals, and the shortening of the time in which he could bring his action, as we have seen, in nowise rendered his judgment less valuable, for, notwithstanding the shortening of the statute of limitations, there was no shortening of the life of the liability. If the creditor or claimant does not obey the law when a reasonable time is given him in which to act, his loss is attributable to his own laches and not to matters which are beyond his power to control. But altogether another principle is involved in the shortening of the life or of the actual demolition of the liability. If the debtor happens to be execution proof just at this time, the creditor is helpless. No amount of diligence or industry will avail him. His judgment, which, before the passage of the law, had at least a prospective value, is now rendered absolutely valueless, and the future

acquisitions which he had a right to rely upon he is now deprived of. The proposition is too well settled to call for discussion, that there is read into every contract the law which was in existence when the contract was entered into, or, in other words, that the parties to a contract have the right to rely upon the law governing the contract at the time it was made, and that law which could reasonably have been taken into consideration will be presumed to have been taken into consideration. It is a matter of common knowledge that many young men in this country, where the avenues of wealth are open to all who are intelligent, industrious and frugal, who are known to be absolutely penniless, if they are known to possess the qualities mentioned above, can obtain money upon the strength and credit of their future earnings and accumulations, and the right to look to these future earnings and accumulations, under the law as it existed at the time the credit was given, is a valuable right and may well be said to have been taken into consideration when the credit was given. A special review of all the authorities cited by the respondent showing that this act is in the nature of a statute of limitation will be profitless, for we think that none of them are cases of this kind. Here a right to a remedy—a remedy which is essential to the recovery of a debt—is not postponed, is not shortened, but is virtually destroyed, and we think without any question that the obligation is impaired, if, indeed, the judgment is not property, which under this law could be taken without due process of law. We therefore hold that the act in question is unconstitutional so far as it refers to contracts which were in existence at the time the law was enacted. We should have stated in the beginning that, so far as the common law right to sue on a judgment is concerned, especially in this state where the common law is the law of the state in the absence of statutory enactment,

the right is so overwhelmingly sustained by the authorities, that it is profitless to discuss it.

· The judgment is reversed, and the cause remanded, with instructions to overrule the motion to set aside the default and judgment.

SCOTT, C. J.; and ANDERS, J., concur.

REAVIS, J. (dissenting).—The act of the legislature under consideration, and set out in the opinion of the majority of the court, in § 4 expressly repeals the former law of the state relating to a renewal of judgments. I do not understand that the opinion questions the power of the legislature to make this repeal, and that it is a valid act of the legislature; but to decide only that it cannot relate to contracts in existence before the enactment of the law. The only constitutional questions, then, are whether the law approved March 6, 1897, impairs the obligation of contracts or takes property without due process of law. No case from any court has been presented by counsel for appellant which in my judgment aids in the solution of the controversy, excepting those from the supreme court of the United States, which are also cited by respondent. It is claimed that the case of *Morley v. Lake Shore & M. S. Ry. Co.*, 146 U. S. 162 (13 Sup. Ct. 54), does not decide that when contractual rights are merged into a judgment they cannot be enforced, and the facts before the court are referred to to sustain this view. The facts in that case seem to be plain. It was a suit to compel the specific performance of a contract and a money judgment was entered thereon in pursuance of the contract, and, if the defendant did not pay the sum specified and interest specified, plaintiff might have execution against the defendant. When the judgment was rendered the legal rate of interest was seven per cent. This rate was afterwards reduced by the legislature to six per

cent. The court held that the judgment was obtained on a contract which contained no provision for interest, and that the allowance of interest was a matter of legislative discretion. Now the point mentioned by appellant, that interest on the judgment was in the nature of statutory damages, and was therefore no part of the contract upon which judgment was obtained, was one decided in the case. But I think the question was also clearly raised and a precise declaration of opinion at any rate, that a judgment obtained upon a contract is not a contract within the protection of the constitution. The court said:

"It is contended on behalf of the plaintiff in error, as stated above, that the judgment is itself a contract, and includes within the scope of its obligation the duty to pay interest thereon. As we have seen, it is doubtless the duty of the defendant to pay the interest that shall accrue on the judgment, if such interest be prescribed by statute, but such duty is created by the statute, and not by the agreement of the parties, and the judgment is not itself a contract within the meaning of the constitutional provision invoked by the plaintiff in error. The most important elements of a contract are wanting. There is no *aggregatio mentium*. The defendant has not voluntarily assented or promised to pay. . . . Where the transaction is not based upon any assent of parties it cannot be said that any faith is pledged with respect to it, and no case arises for the operation of the constitutional prohibition. *Garrison v. City of New York*, 21 Wall. 196,203. It is true that in *Louisiana v. New Orleans*, and in *Garrison v. City of New York*, the causes of action merged in the judgments were not contract obligations; but in both those cases, as in this, the court was dealing with the contention that the judgments themselves were contracts *proprio vigore*."

It will be observed in this case the supreme court discussed the very question of the distinction between judgments on torts, and which it had theretofore held were not contracts within the constitutional prohibition, and judg-

ments on contracts, and held that the judgment is not a
contract because the most important elements of a contract
are wanting, *i. e.*, the *aggregatio mentium*. Now, the cases
cited by counsel for appellant sustaining Blackstone's de-
finitions of judgments are not at this day entirely correct.
The very refined theories upon which Blackstone's defini-
tion is sustained are merely interesting from an anti-
quarian and historical standpoint. See *Freeland v. Wil-
liams*, 131 U. S. 405 (9 Sup. Ct. 763); *Louisiana v. Mayor
of New Orleans*, 109 U. S. 285 (3 Sup. Ct. 211); *Con-
necticut Mut. Life Ins. Co. v. Cushman*, 108 U. S. 51 (2
Sup. Ct. 236). The appellant (plaintiff below) holds the
contract of the defendant to pay a certain sum of money.
Unquestionably the law for the enforcement of the con-
tract, or rather the remedy existing at the time the con-
tract was entered into, cannot be impaired by the state.
But what was the remedy existing at that time? It was
the right of action against the defendant for his breach of
the contract—his failure to pay the note when due—and to
recover a judgment against defendant upon which an exe-
cution could issue against all his property not exempt from
execution. And by the then existing law the judgment so
recovered against defendant was a lien and the judgment
and the lien existed together for six years. It was written
in the law creating this judgment that its existence, togeth-
er with that of the lien thereunder, was for six years. At
the end of that time, by the law of its creation, the judg-
ment was dead. It is true that another statute provided for
the revival of the judgment. The latter statute, I think,
was merely a voluntary act of the legislature and not
founded on any contract, but solely a question of public
policy, and I do not think that by any force of reasoning
it can be held that the parties in entering into the original
contract had in mind such a remedy, and it was no part of

the original contract. And so, too, with the lien which the original judgment here gave the plaintiff. It was strictly a part of the remedy confined to the original judgment. The plaintiff having brought his action and obtained his judgment the contract then became absolutely merged in the judgment and all the legislature has done in the act of 1897 is to take away the sanction of the state to a resurrection and revivification of a dying judgment. I think also the statute of 1897 is in the nature of a law of limitation. Limitation may be applied to remedies as well as to rights of action. They are alike in principle. *Drury v. Henderson,* 143 Ill. 315 (32 N. E. 186); *Merchants' Ins. Co. v. Hill,* 86 Mo. 466; *Tennessee v. Sneed,* 96 U. S. 74; *Bronson v. Kinzie,* 1 How. 311; *Sanger v. Nightingale,* 122 U. S. 176 (7 Sup. Ct. 1109); *Terry v. Anderson,* 95 U. S. 628. In the last case the supreme court of the United States discussed the reasonableness of the time before the bar of limitations attached, and said:

" Of that the legislature is primarily the judge; and we cannot overrule the decision of that department of the government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts. . . . The business interests of the entire people of the state had been overwhelmed by a calamity common to all. Society demanded that extraordinary efforts be made to get rid of old embarrassments, and permit a reorganization upon the basis of the new order of things. This clearly presented a case for legislative interference within the just influence of constitutional limitations. For this purpose the obligations of old contracts could not be impaired, but their prompt enforcement could be insisted upon or an abandonment claimed. That, as we think, has been done here, and no more."

In that case a note was barred within nine months and seventeen days, *i. e.*, a nine months' limitation was upheld, *Rexford v. Knight*, 11 N. Y. 308; *People v. Turner*, 117 N. Y. 227, (22 N. E. 1022; 15 Am. St. Rep. 498); *Jackson v. Lamphire*, 3 Pet. 280. In *People v. Turner*. *supra*, six months was held a reasonable limitation within which to do an act after the passage of the law. *Vance v. Vance*, 108 U. S. 514 (2 Sup. Ct. 854). In *Curtis v. Whitney*, 13 Wall. 68, it was said:

" Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation. For such legislation demanded by the public good, however, it may retroact on contracts previously made, and enhance the cost and difficulty of performance, or diminish the value of such performance to the other party, there is no restraint in the federal constitution, so long as the obligation of performance remains in full force."

And in *Vance v. Vance, supra,* the same court said of the state statute:

" It is in its nature a statute of limitations. The right of the state to prescribe the time within which existing rights shall be prosecuted, and the means by and conditions on which they may be continued in force, is, we think, undoubted. Otherwise, where no term of prescription exists at the inception of a contract, it would continue in perpetuity, and all laws fixing a limitation upon it would be abortive. Now, it is elementary that the state may establish, alter, lengthen or shorten the period of prescription of existing rights, provided that a reasonable time be given in future for complying with the statute."

But a distinction is drawn between the limitation on the right to commence an action and the limitation on the right to issue an execution or the duration of a lien. I can

see no difference. The judgment creditor has his full six years under his judgment in which to make his levies. If he does not, then his right may or may not be renewed in the discretion of the legislature. It is not a matter of contract. As said in *Louisiana v. New Orleans*, 109 U. S. 285 (3 Sup. Ct. 211), also mentioned in the opinion of the majority:

" A party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it."

Thus the legislature of 1897 did not attempt to destroy the contract, if any existed, between plaintiff and defendant, but did withdraw a contingent remedy upon such contract, but which was not a part of the original contract. The contract, if one please, may be said to exist, but without remedy to enforce its moral obligation. *Phalen v. Virginia*, 8 How. 163; *Campbell v. Holt*, 115 U. S. 620 (6 Sup. Ct. 209); *Gittings v. Stearns*, 19 Ill. 376; *Bell v. Roberts*, 13 Vt. 582. It is questionable whether the common law right to bring an action on judgments exists as a *strict* matter of right in this state. This right to institute an action has been frequently questioned by the ablest jurists and many courts upholding the right have granted it with reluctance, and it has been denied by some authorities. It seems upon principle to be a useless and expensive proceeding to allow a plaintiff to commence an action upon a judgment the day after it has been entered, and thus to put it within his power to accumulate costs and distress the defendant unnecessarily. It would seem that the courts should have the power to restrain the abuse of such action, and this evidently was the view held by this court in *Abernethy v. Town of Medical Lake*, 9 Wash. 112 (37 Pac. 306), where the court refused to allow an action to be maintained upon a municipal warrant for the reason that any judgment obtained thereon could only be satisfied by the issuance of

a like warrant, and that therefore there was no necessity for, nor advantage growing out of, such action. The principle decided in that case was surely the same as that in a suit upon a judgment because the judgment creditor in all cases has the right to his execution on the first judgment, and it is the only right he obtains by his action upon a judgment and the recovery of the second judgment. See *Pitzer v. Russel*, 4 Ore. 124; Freeman, Judgments (4th ed.), § 449; Freeman, Executions (2d ed.), ch. 8; which are in consonance with the views expressed here. And I do not think the common law right to commence an action on a judgment in this state is a strict one, but more in the nature of a *permissive* one. I cannot conclude that the statute of 1897 under discussion is unconstitutional when applied to existing or prior judgments at the time of its enactment.

GORDON, J.—I concur in the views expressed by Justice REAVIS.