[No. 11982.  Department Two.  September 16, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Louisa A. Conner et al., Plaintiff*, v. THE SUPERIOR COURT FOR SKAGIT COUNTY *et al., Respondents.*[1]

CONSTITUTIONAL LAW—VESTED RIGHTS—DIKING DISTRICTS — ASSESSMENT OF BENEFITS—JUDGMENT—CONCLUSIVENESS.  3 Rem. & Bal. Code, § 4107, providing for a redetermination of the question of benefits to lands resulting from the maintenance of dikes, both within and without the district as originally established, is not unconstitutional as authorizing a disturbance of vested rights as determined by the verdict and judgment rendered at the time of the creation of the district; since the original judgment and verdict did not finally determine the amounts which each owner would be required to pay, either for cost of original construction or for maintenance thereafter, and were not strictly judicial in character, but determined only the maximum amount of benefits per acre to be derived by each landowner from the construction of the improvement, as provided by Rem. & Bal. Code, § 4106, and were not conclusive upon the question of benefits to be used as a basis for the levying of future maintenance charges, and the fact that the question of condemnation of land for the construction of the dikes, and the question of benefits resulting to lands within the district to be used as a basis for future levies of the assessment for the cost thereof, are triable in one proceeding by the same court and jury, under Rem. & Bal. Code, § 4106, does not render conclusive the question of benefits at the time of the creation of the district, the same being apart from the question of the award, which pertains strictly to the condemnation proceeding.

DRAINS—DIKING DISTRICTS—ASSESSMENT OF BENEFITS—PROPERTY LIABLE.  3 Rem. & Bal. Code, § 4107, providing that when it shall appear to the board of diking commissioners that any lands within or without the district as originally established should be assessed for the purpose of raising funds for future maintenance, or that assessments on land already assessed should be equalized in proportion to benefits received, they shall file a petition in the superior court asking that the original cause be reopened for further proceedings for the purpose of assessing the lands or equalizing the assessments already made, is not unconstitutional as authorizing the diking district to levy taxes on land outside its boundaries, in violation of Const., art. 11, § 12, providing that the legislature shall have no

[1]Reported in 143 Pac. 112.

power to impose taxes upon counties, cities, towns, or other munici-
pal corporations, but may vest in the corporate authorities thereof
the power to assess and collect taxes for such purposes, since it is
a special tax levied according to benefits resulting to the land to be
charged therewith, and not according to value, as is required in
the levying of general taxes; and it is not a violation of legislative
power that the tax is imposed by officers in whose election the
owners of land have no voice.

SAME. The act, 3 Rem. & Bal. Code, § 4107, is not unconstitu-
tional in that it authorizes the exercise of extra-territorial jurisdic-
tion and enables the taxing of land outside the district which may
be within another district, since the charges are measurable only
by the benefits resulting to the land charged.

STATUTES—TITLE AND SUBJECTS—DIKING DISTRICTS. The title to
the Laws of 1913, p. 267 (3 Rem. & Bal. Code, § 4107), "An act re-
lating to dikes and drains, providing for assessments according to
benefits, authorizing the incurring of obligations in cases of emer-
gency, and validating certain warrants theretofore issued for such
purposes, and amending certain sections of the code," is not invalid
as embracing more than one subject; since the provision of the act
authorizing the diking commissioners, in cases of emergency, to
incur additional obligations and issue warrants in excess of their
annual estimate of the cost of maintenance of the diking system,
which warrants shall be valid and legal obligations of the district,
and validating warrants theretofore issued, does not constitute an
independent subject, but is all germane to the general title, and not
in violation of Const., art. 2, § 19, providing that no bill shall em-
brace more than one subject, and that shall be expressed in its title.

Certiorari to review orders of the superior court for Skagit
county, Houser, J., entered March 23, 1914, in proceedings
to determine benefits to lands within a diking district.
Affirmed.

*A. R. Hilen* and *Thos. Smith*, for relators.

*Brawley & Hammack*, for respondents.

PARKER, J.—The commissioners of Diking District No. 1
of Skagit county seek, through a proceeding in the superior
court for that county, to have the benefits to the lands within
the district, resulting from the maintenance of the dikes of
the district, again determined; and also to have the benefits

to certain lands outside of, and near the boundaries of, the district, resulting from the maintenance of the dikes of the district, determined; to the end that the maintenance of the dikes of the district may become a charge upon all of such lands in proportion to benefits therefrom based upon present conditions. The proceeding was prosecuted in the superior court under chap. 89, p. 267, Laws of 1913 (3 Rem. & Bal. Code, § 4107), which is amendatory to the diking district law, found in Rem. & Bal. Code, § 4091 *et seq.* (P. C. 151 § 1 *et seq.*). The superior court having assumed jurisdiction of the proceeding upon petition of the drainage commissioners, overruled demurrers of these relators to the commissioners' petition, challenging the jurisdiction of the superior court, and the court being about to proceed with the trial of the question of benefits resulting to relators' property from the maintenance of the dikes of the district, the relators caused the proceeding to be brought to this court by *certiorari*, and seek the setting aside and anullment of the proceedings and the reversal of the orders of the superior court made therein, upon the ground that the amendatory act of 1913, authorizing the proceeding, is unconstitutional, and that, therefore, the superior court is proceeding without jurisdiction.

Diking district No. 1 of Skagit county was duly organized, and the benefits to lands lying within its boundaries resulting from the dikes to be constructed and maintained therein were determined by verdict of a jury and judgment of the court rendered in 1897, in pursuance of the provisions of the diking district law as then existing. Rem. & Bal. Code, § 4091 *et seq.*; Laws of 1895, p. 304. Thereafter, the dikes were constructed as originally contemplated, and the cost thereof, and also the cost of their maintenance since then, made a charge upon the lands within the district in proportion to the benefits so determined. In January, 1914, the commissioners of the district commenced this proceeding in the superior court under the amendatory act of 1913, against

these relators and other owners of lands both within and with-
out the district, to have the benefits to such lands resulting
from the maintenance of the dikes made a charge upon all
of such lands in proportion to benefits, based upon present
conditions.

It is first contended by counsel for relators, especially in
behalf of those relators owning lands within the district, that
the act of 1913 is unconstitutional in that it, in effect, au-
thorizes the disturbing of their vested rights in the verdict
and judgment which, at the time of the creation of the dis-
trict, determined the question of benefits to their lands re-
sulting from the construction and maintenance of the dikes
of the district. That judgment, they insist, became the fixed
and final basis for all time upon which the expense of main-
taining the dikes of the district, as well as the acquisition of
lands therefor by eminent domain proceedings and the orig-
inal construction thereof, must be apportioned and charged
against their lands. This burden upon relators' lands which
are within the district will be materially increased and will be
materially lessened upon other lands within the district if the
present claims of the diking commissioners are successfully
maintained; since it will result in determining the benefits to
their lands to be greater and the benefits to land of other own-
ers in the district to be less than as determined by the verdict
and judgment rendered upon that question at the time of the
creation of the district. The relators' claim of vested rights
in the result of the original verdict and judgment is appar-
ently rested upon the theory that such determination has all
the force and effect of a judgment rendered in litigation be-
tween private parties, wherein the judgment awards money
in a specified amount, or specific property to a party. If
the judgment determinative of the benefits rendered at the
time of the creation of the district is of this nature, the
settled rules of constitutional law would seem to support the
contention made by counsel for relators, since to disturb
such a judgment, other than by the usual modes of review,

would be to interfere with vested rights in violation of constitutional guaranties. Counsel for relators cite and rely upon the following decisions of this court: *Bettman v. Crowley,* 19 Wash. 207, 53 Pac. 53, 40 L. R. A. 815; *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216; *Raught v. Lewis,* 24 Wash. 47, 63 Pac. 1104; *Fischer v. Kittinger,* 39 Wash. 174, 81 Pac. 551, in all of which cases, vested rights were involved which had been settled by the rendition of judgments of that nature.

This leads to the inquiry, What is the nature of the original determination of the question of benefits by the verdict and judgment of the court, rendered at the time of the creation of the district? Is it a final determination, binding upon the district and the owners of land therein for all time, as to the measure of the contributions to be exacted from them for the maintenance of the dikes of the district, or is the question of benefits to their land subject to be again determined as a basis for charges to be made against their lands for maintenance of the dikes of the district? Now, the original judgment did not finally determine the specific amounts which the owner of each tract of land would be required to pay, either towards the cost of the original construction of the dikes of the district, or towards the cost of their maintenance thereafter; but only determined, using the language of the diking law, Rem. & Bal. Code, § 4106 (P. C. 151 § 31), "the maximum amount of benefits per acre to be derived by each of the land owners from the construction of said improvement," which determination became the basis for the assessment tax to be levied from time to time in that proportion against the several tracts of land within the district to pay the cost of the maintenance of the dikes of the district as well as the cost of their original construction. Rem. & Bal. Code, §§ 4110, 4121, 4128 (P. C. 151 §§ 39, 61, 75). In 1913, the legislature passed the act here involved, amending the law as it existed at the time of the

original determination of benefits to the land within the district, providing, among other things, as follows:

"If at any time it shall appear to the board of diking commissioners that any lands within or without said district as originally established are being benefited by the diking system of said district and that said lands are not being assessed for the benefits received, or that any lands within said district are being assessed out of or not in proportion to the benefits which said lands are receiving from the maintenance of the diking system of said district, and said board of diking commissioners shall determine that certain lands, either within or without the boundaries of the district as originally established, should be assessed for the purpose of raising funds for the future maintenance of the diking system of the district, or that the assessments on land already assessed should be equalized by diminishing or increasing the same so that said lands shall be assessed in proportion to the benefits received, said commissioners shall file a petition in the superior court in the original cause, setting forth the facts, describing the lands not previously assessed and the lands the assessments on which should be equalized, stating the estimated amount of benefits per acre being received by each tract of land respectively, giving the name of the owner or reputed owner of each such tract of land, and praying that such original cause be opened for further proceedings for the purpose of subjecting new lands to assessment or equalizing the assessments upon lands already assessed or both." Laws of 1913, p. 267 (3 Rem. & Bal. Code, § 4107).

This is followed by provisions for service of summons upon the owners of lands within the district, and the owners of lands without the district sought to be charged, and for a new trial of the question of benefits, substantially as in the original diking district law. While the question of benefits was, under the provisions of the diking district law as it existed at the time of the creation of the district, determined by a jury in a proceeding in the superior court, upon which a judgment was rendered in that court, we are constrained to hold that such verdict and judgment was not conclusive for all time upon the question of benefits to be used as the basis

for apportioning the levy of the cost of future maintenance of the dikes of the district, to the extent that the legislature could not constitutionally provide for a re-determination of the question of benefits, both to lands within and without the district for that purpose.    Such original determination of benefits was judicial only in the sense that assessment and equalization of the value of property by administrative officers for general taxation is judicial; so far, in any event, as the cost of future maintenance of the dikes of the district and apportioning of the cost thereof as a charge against the benefited lands is concerned.    That is not a question which the constitution requires to be determined by a jury or a court, but a question which could have been, by the legislature, committed for determination to administrative officers, as the question of benefits in ordinary local improvements is so committed.    *Commissioners etc. v. Seattle Factory Sites Co.*, 76 Wash. 181, 135 Pac. 1042.    It was not even, as in ordinary local improvements, a final determination of the amount which was ultimately to become a charge against each tract or parcel of land, based upon proportional benefits; but it was only a determination of the maximum benefits resulting to each tract or parcel, to become a basis for apportioning the future cost of the maintenance of the dikes of the district as well as the cost of their construction.    That determination may be likened to the assessment and equalization of land values by assessing officers as a basis for general taxation, notwithstanding the benefits to, instead of the value of, the land become the measure of the amount of tax to be charged against the different tracts from time to time as the expense is incurred.    We are quite unable to understand why the legislature may not provide for a re-determination of the question of benefits from time to time, at least as a basis for maintenance expenses, the same as it may provide for a revaluation of land from time to time as a basis for general taxation.    Conceding, for argument's sake, that when the benefits were originally determined, such determination was

final in so far as apportioning expense then incurred incident-
al to the construction of the dikes of the district is concerned,
it does not follow that the maintenance costs of the dikes for
all time must be charged and apportioned against the land
upon the basis of that determination, and that the legislature
is thereafter forever prohibited from providing for a re-
determination of benefits as a basis for future levies for main-
tenance of the dikes.

Counsel for relators call attention to our recent decision
in *Seattle v. Krutz*, 78 Wash. 553, 139 Pac. 498, where we
said, "Judgments in condemnation procedure do not differ
from judgments in the ordinary proceedings in law or equity.
They become final and any errors contained in them can
only be corrected on appeal." Counsel invoke this rule, rest-
ing upon the assumption that the finding of the jury and
judgment of the court thereon determining the benefits at
the time of the creation of the district was a condemnation
judgment, and therefore resulted in the relators acquiring
vested rights thereunder. We do not so view that verdict
and judgment. It is true that, under the procedure provided
in the diking district law, the matter of the condemnation of
land for the construction of the dikes and the question of
benefits resulting to lands within the district from the con-
struction of the dikes, to be used as a basis for future levies of
the assessment tax, are triable in one proceeding by the same
jury and court. Rem. & Bal. Code, § 4106 (P. C. 151 § 31),
upon that subject, provides as follows:

"The jurors at such trial shall make in each case a sepa-
rate assessment of damages which shall result to any person,
corporation or company, or to the state, by reason of the
appropriation and use of such land, real estate, premises or
other property for said improvement, and shall ascertain, de-
termine and award the amount of damages to be paid to said
owner or owners, respectively, and to all tenants, encum-
brancers and others interested, for the taking or injuriously
affecting such land, real estate, premises or other property
for the establishment of said improvement; and shall further

find the maximum amount of benefits, per acre, to be derived by each of the land owners from the construction of said improvement."

This manner of combining the trial of these questions, however, does not give to that portion of the verdict and judgment determining benefits any different force or effect than as if the question were determined by administrative officers apart from the questions of the award which pertain strictly to the condemnation proceeding. Of course, the award made by the jury, upon which the judgment was rendered, determining the amount the district should pay for land appropriated for the construction of the dikes, was a final determination upon that question, and resulted in vested rights being acquired both by the landowner and the district, which could not thereafter be disturbed by subsequent legislation; but that, so far as vested rights thereunder are concerned, is quite apart from the question of vested rights in the determination of benefits as a basis for the levying of future maintenance charges. We have had occasion to point out the distinction between eminent domain and local assessment proceedings, which must often be recognized in determining the rights of parties, even when there is, under the law, one proceeding, in form, wherein is tried both condemnation and special assessment issues. Clearly the question of benefits belongs to the latter. *Commissioners etc. v. Seattle Factory Sites Co., supra.* We are of the opinion that the act of 1913 is not in violation of any constitutional provision, as authorizing an interference with vested rights resting upon judgments rendered in pure judicial proceedings.

It is next contended, in behalf of owners of land outside of the district, that the act of 1913 is unconstitutional in that it, in effect, authorized the diking district, which, it is assumed, is a municipal corporation, to levy and collect taxes on lands lying without its boundaries, and thereby to impose taxes upon owners of land who have no voice in the election of its officers, nor in the management of its affairs. This does,

at first thought, seem to suggest a violation of the spirit of
§ 12, art. 11 of our constitution, which reads:

"The legislature shall have no power to impose taxes upon
counties, cities, towns, or other municipal corporations, or
upon the inhabitants or property thereof, for county city,
town, or other municipal purposes, but may by general laws
vest in the corporate authorities thereof the power to assess
and collect taxes for such purposes."

The answer to this contention is found, however, in the fact
that the levy of the cost of maintenance of the dikes of the
district, as well as the cost of their original construction, is
measurable by proportionate benefits resulting to the sev-
eral tracts of land to be charged therewith, and not accord-
ing to value as general taxes are required to be levied.    In
*Seanor v. County Commissioners*, 13 Wash. 48, 42 Pac. 552,
this constitutional provision was held not to have any refer-
ence to special taxes levied according to benefits.    It is, there-
fore, not constitutionally imperative that local special as-
sessments be imposed only by officers elected by the owners of
land against which such assessments are charged.    The tax
being measurable by benefits, the legislature, we think, had
the power to cause dikes to be constructed and maintained at
the expense of benefited lands through any agency it deemed
wise to provide for the creation of, even though the owners of
the land to be so taxed have no voice whatever in the choosing
of the persons composing such agency.    We know of no con-
stitutional provision standing in the way of such an exercise
of legislative power, though it must be conceded that such an
exercise of legislative power as this evidences in this particular
seems to violate the spirit of our institutions; yet not so plain-
ly in violation of any provision of our constitution as to war-
rant our holding the law void upon that ground.

It is also contended in this connection that the act of 1913
is unconstitutional in that it, in effect, not only enables the
commissioners of the diking district to exercise extra-terri-
torial jurisdiction, but it enables them in this case to exer-

cise jurisdiction over lands which are not only without their district, but are actually within the bounds of another district possessed of the same powers.  Counsel cite and rely upon the decision of the supreme court of Michigan in *Baxter v. Robertson*, 57 Mich. 427, 23 N. W. 711, where township officers sought to exercise powers without the limits of their township and within the limits of another township, and their acts were held void, although seemingly sanctioned by legislative enactments; upon the ground, apparently, that townships in Michigan are constitutionally created municipalities, and that, therefore, the people or officers of one township can have no voice in the affairs of another township. If the question here were simply one of different municipalities occupying the same territory for the exercise to some extent of the same power for the same purpose, counsel's contention would be answered by our observations in *Paine v. Port of Seattle*, 70 Wash. 294, 304, 126 Pac. 628, 127 Pac. 580, where we noticed the occupancy of the same territory by the port district, the city of Seattle, and the county of King, all having in some measure the same powers.  But counsel's contention, we think, is, in any event, answered by the fact that diking districts are municipal corporations only in a limited sense, being little else than local improvement districts, possessing no power whatever to incur obligations payable by general taxation.  All of their obligations are payable by taxation levied according to benefits, and such taxation, as we have noticed, may be levied by any agency the legislature may deem wise to provide for.

We conclude that the act of 1913 is not unconstitutional because of its seeming authorization of the exercise of extraterritorial jurisdiction by the officers of a diking district, nor because of the authorization of the charging of the maintenance of the dikes of one district upon lands which may be in another district, since such charges are measurable only by benefits resulting to the land charged therewith.

It is finally contended by counsel for relators that the act of 1913 is unconstitutional because its title embraces more than one subject, thereby violating section 19, article 2, of our constitution, which provides: "No bill shall embrace more than one subject, and that shall be expressed in its title." The title of the act reads:

"An act relating to dikes and drains, providing for assessments according to benefits, authorizing the incurring of additional obligations in cases of emergency, and validating certain warrants heretofore issued for such purposes, and amending sections 4107 and 4121 of Remington & Ballinger's Annotated Codes and Statutes of Washington."

The act consists of but two sections. Section 1 relates to the retrial of the question of benefits, and section 2 reads as follows:

"The board of commissioners of any diking district organized under the provisions of this act shall, on or before the first day of November, of each year, make an estimate of the cost of maintenance of the diking system in such district, which estimate shall include the cost of making any necessary repairs that it might become necessary to make in the maintenance of such system. Such estimate shall be for the succeeding year, and the amount so estimated shall be certified by the board of . . . commissioners to the auditor of the county in which such district is located, on or before said date, and the amount thereof shall be levied against and apportioned to the land in such district benefited by said improvement, in proportion to the maximum benefit originally assessed, and such amount shall be added to the general taxes against said lands and collected therewith: *Provided, however,* That in case of emergency not in contemplation at the time of making such annual estimate the diking commissioners may incur additional obligations and issue valid warrants therefor in excess of such estimate, and all such warrants so issued shall be valid and legal obligations of such district; and all warrants heretofore issued for such purposes under the provisions of this act, are hereby declared to be valid and legal obligations of the district so issuing the same."

the portion following the words "provided, however," being
the change in the original section of the diking district law
amended.

It hardly needs argument to demonstrate that the title
to' this act is clearly sufficient as a title to all that is con-
tained in the body of the act.   In support of their conten-
tion that it embraces more than one subject, counsel rely
upon the decision of this court in *Percival v. Cowychee etc.
District*, 15 Wash. 480, 46 Pac. 1035, where it was held that
the title of an act showing its object was to provide for the
organization and government of irrigation districts and the
sale of bonds arising therefrom was not broad enough to
embrace a provision in the act validating the indebtedness of
a district previously organized.   That decision, as we read
it, involved a question of the title being too restricted to
cover the subject-matter in the act, and did not involve the
question of more than one subject in the act.   In *Landy v.
King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817,
where there was involved the question of more than one sub-
ject in the act, Justice Scott, speaking for the court, said:

".   .   .   an act of the legislature will not be declared
void except in cases where the violation of this constitutional
inhibition is most clear, and sound policy and legislative con-
venience require that this provision should be liberally con-
strued."

Applying this rule to the case in hand, it seems quite clear
to us that the question of validity of previously issued war-
rants for the payment of maintenance charges, which is
claimed to be an independent subject, is sufficiently akin to
the general subject being legislated upon that it should not
be regarded as a' separate subject within the meaning of the
constitutional provision requiring legislative acts to be con-
fined to one subject.   *State ex rel. Puget Mill Co. v. Superior
Court*, 68 Wash. 425, 123 Pac. 791.   We conclude that the
act of 1913 is not unconstitutional upon this ground urged
by counsel for relators.

We do not desire to be understood as expressing any opinion upon the question of whether levies may be made other than for the cost of future maintenance of the dikes of the district, based and appropriated upon benefits to lands within and without the district which may be determined by the verdict of the jury and judgment of the court in this proceeding in the superior court. That levies may be so made for future maintenance, we are convinced, and we need go no further to hold that this law is constitutional. Whether levies made to pay existing indebtedness of the district incurred for the construction of, or past maintenance of, the dikes must be made upon the basis of benefits originally determined or upon the benefits to be determined in this proceeding, is a question we are not here required to determine.

We conclude that the learned trial court was not proceeding in violation of any constitutional limitation, but lawfully; and that its orders must be affirmed, and the cause remanded for further proceeding.

It is so ordered.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.