## Ludwick *against* Huntzinger.

5ws 51<br>192 111

In an action on a bond for the purchase money of land conveyed by the plaintiff to the defendant, the defendant may give evidence to show that the plaintiff had no title to the land conveyed, unless the vendee was to take the title such as it was.

To rebut the presumption arising from acceptance of a deed and giving bond, the defendant must in such suit show the title positively bad by proving a superior and indisputable title in another person asserting such title.

But where the action is merely on a contract of purchase, it is sufficient for the defendant to show the title doubtful, unless he has agreed to take such title.

Articles fully executed by paying part of the purchase money and giving bond, and conveyance made under them, have no bearing in a suit on such bond.

*Quære*, how it would be in such suit if the defendant could show the land conveyed to be different from that contracted for.

Bond dated in 1830 conditioned for the payment of money on the 1st of April 1832, with 3 per cent. interest from the date; the plaintiff is entitled to recover interest at 3 per cent. till the time of payment, and after that legal interest at the rate of 6 per cent.

ERROR to the District Court for the city and county of *Philadelphia*.

This was an action of debt brought by Samuel Huntzinger against George Ludwick on a bond given by the defendant to the plaintiff dated 1st July 1830, conditioned for the payment of $1143.75 on the 1st of April 1832, with 3 per cent. interest from date; which bond, it was admitted, was given in part consideration of the sale of a tract of land.

[Ludwick v. Huntzinger.]

The defendant read the following notice of special matter :

" The defendant will offer on the trial of the above cause the *full evidence*, to prove the following special matter : That the bond on which the action is brought, was given as part of the consideration for the purchase of a certain tract of land, situate in Schuylkill county, in the State of Pennsylvania, containing about 223 acres, more or less. That the plaintiff and others interested, entered into articles of agreement with the defendant, before the execution and delivery of said bond, through the agency of John Wickurham, for the sale of three-fourths of the said tract, at the price of $75 per acre. That the plaintiff and those concerned and interested with him, promised the said Wickurham to pay him a certain sum for the sale of said tract, and instructed him to assure the defendant, that the title to be made to the said defendant was in every respect good, valid and unexceptionable, and that they would convey the tract to the said defendant by a deed, containing a warranty against any defect or imperfection in the title to the same. That the said John Wickurham, by communicating the instructions received from the plaintiff and those connected with him, to the said defendant, induced the defendant to contract for the purchase of the said three-fourths of the tract before mentioned, and to pay the sum of $5000, part of the purchase money, and to execute bonds to the parties concerned for the balance of the purchase money, on one of which the above action is instituted. That the plaintiff and others concerned with him, thereon delivered defendant a deed for the said three-fourths, assuring him that the title was perfect and unexceptionable, and that the said deed was in pursuance of, and in conformity with the contract above mentioned. That defendant will further offer evidence to show that the title under which the plaintiff and his associates claimed, was under an alleged sale of the tract of land, and sold for taxes by the sheriff of Berks county, to a certain William Green. The defendant will further offer evidence to show that no such sale was made of the said tract, to the said William Green, and that if such sale ever was made, it was wholly irregular in every respect, and that the requisitions of the law were entirely disregarded and not complied with, and that no title vested in the said William Green. That any title which the said William Green had, or could have, to the said tract, was derived from a private agreement made between the said William Green and a certain Philip Kremer, who was sheriff of Berks county at the time of said agreement, which private agreement was entered into many years after the pretended sale. That the alleged sale, if made, was individually made of a tract of land belonging to Francis Parvin. That the tract for part of the purchase of which the bond was given, was not at any time the property of Francis Parvin individually, but was part of a larger tract, conveyed to Benjamin Lightfoot and Francis Parvin, under an application dated July 5, 1751. The

defendant will further show that certain tracts of land were held by Francis Parvin alone in said Berks county, and that one of them at least was sold for taxes. The defendant will further show that the plaintiff and those interested with him, do not derive title from William Green above mentioned, that the alleged conveyances under which they claim from him are defective, irregular and illegal. The defendant will also show that the title of the plaintiff to the land for part of the purchase money, of which the said bond was given, was in other respects deficient and irregular, and that the title conveyed to the defendant is defective and invalid."

The defendant then gave in evidence a deed dated the 1st July 1830, from Jacob and Samuel Huntzinger and John Schall and their wives, for three-fourths of 244 acres of land in Schuylkill county, Pennsylvania, strict measure, for the consideration of $13,725; it being part of a large tract of land surveyed by warrant of 5th July 1751 granted to Francis Parvin and Benjamin Lightfoot, and patent issued thereon 18th June 1830, to Jacob Huntzinger, John Schall, Samuel Huntzinger and Burd Patterson. Also an application by and warrant to Francis Parvin and Benjamin Lightfoot, dated 5th July 1751, for 1000 acres, on the waters of Schuylkill, beyond the second ridge of hills in the county of Berks; and a return of survey by Thomas Lightfoot, D. S., for 135 acres, purporting to be a re-survey of a survey in June 1751, in pursuance of said warrant or application.

The defendant then offered in evidence the following papers:

The will of Francis Parvin, dated 20th June 1767, and proved 3d September 1767, in which he devised the lands in question to his executors, to sell and divide proceeds among his four children, subject to certain specified payments. The minutes of the board of property, dated 7th November 1785, upon the application of Elizabeth Lightfoot, executrix of Benjamin Lightfoot deceased, for a re-survey of said warrant of 5th July 1751. Also the record of an acknowledgment of a deed from Philip Kremer, sheriff of Berks county, to William Green, dated 26th October 1781, as follows:

Thomas Jones, Thomas Parry and Daniel Messersmith, Esqs, Commissioners of Berks county, v. Francis Parvin. Warrant dated at Reading, October 19, 1781.

And now, to wit, the 5th day of April 1793, Philip Kremer, Esq., Sheriff of said county, acknowledged in open court a deed poll, bearing date the 26th day of October 1781, for conveying unto William Green, of Berks county, store-keeper, all that certain tract of land, situate in Brunswick township, in the said county, containing three hundred acres, which is situated on Big Schuylkill, and adjoining other lands of *the said Francis Parvin*, and which said tract, the said Francis Parvin and Benjamin Lightfoot, both since deceased, held as tenants in common, seized and taken in execution by the said Sheriff, by virtue of a warrant under the

hands and seals of the said Commissioners, bearing date the 19th day of October 1781, for taxes thereupon assessed, and in arrear and unpaid. Which said tract of land he the said Sheriff, after due public and timely notice given of the time and place of sale, did on the 22d day of October 1781, expose to sale by public vendue or outcry, and did sell the same to the said William Green for the sum of £57, in state money, he being the highest bidder, and that the highest and best price bidden for the same. To have and to hold the said tract of land with the appurtenances, unto the said William Green, his heirs and assigns, to the only proper use and behoof of the said William Green, his heirs and assigns for ever, according to the force, form and effect of the laws of this commonwealth of Pennsylvania, in such case made and provided.

Also a deed from William Green to Michael Bushey, dated 30th May 1797, for 218 acres situate in Manheim township, reciting it as part of a larger tract surveyed to Francis Parvin and Benjamin Lightfoot, by virtue of a warrant to them dated about 1st July 1751, and which as late the estate of the said Francis Parvin and Benjamin Lightfoot, since deceased, was sold and conveyed by Philip Kremer, Esq., then Sheriff, by deed poll dated the 20th of October 1781, to the said William Green in fee, &c.

Also a deed from Michael Bushey to Michael Moser and Jacob Epler, dated 7th June 1802, containing the same recital as the deed from Green to Bushey. Also an unrecorded assignment from Jacob Epler to Michael Moser, dated 8th August 1804, for his interest in said 218 acres. Also a deed from Michael Moser to John Stahl and Jacob Stahl, Jun., dated 23d May 1805, for 218 acres, with same recital as the two former deeds. Also a deed of assignment, endorsed on the foregoing deed, from John Stahl and Jacob Stahl, Jun., and Elizabeth his wife, to Jacob Stahl, Sen., dated 20th September 1816, and recorded 3d May, 1830.

Also a deed from Jacob Stahl, Sen., to John Stahl, dated 21st September 1816, for the said 218 acres, reciting as in former deeds, recorded 3d May 1830. Also an unrecorded deed from Jacob Stahl, administrator of John Stahl deceased, pursuant to an order of the Orphans' Court, to Jacob Huntzinger, John Schall, Samuel Huntzinger and Burd Patterson, dated 31st March 1829, for the said 218 acres, consideration $1860. Also the following articles of agreement for the sale of the said land :

"Articles of an agreement made and concluded the 9th day of June 1830, between John Schall, of the borough of Orwigsburgh, Jacob Huntzinger, of the same place, and Samuel Huntzinger, of the borough of Pottsville, all of the county of Schuylkill, of the one part, and George Ludwick, of Blockley township, in the county of Philadelphia, of the other part—witnesseth that the said John Schall, Jacob Huntzinger and Samuel Huntzinger, for the consideration hereinafter mentioned, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said

[Ludwick v. Huntzinger.]

George Ludwick, and to his heirs and assigns, three full, equal and undivided fourth parts (the whole into four equal parts to be parted and divided) of and in all that certain tract or parcel of land, situate in Schuylkill township, in the county of Schuylkill and state of Pennsylvania, bounded by lands patented to Michael Bushey, the heirs of John Neier, Edward W. Robenson, land late of John Keim, and land of Burd Patterson, containing 244 acres and 7 perches, strict measure. In consideration whereof, the said George Ludwick promises and agrees to pay to the said John Schall, Jacob and Samuel Huntzinger, their heirs, executors and administrators, the sum of $13,725, lawful money of the United States, in manner following, to wit: that is to say, $3431.25, part thereof, on the 1st day of July next, the like sum of $3431.25 on the 1st day of January 1831, and the like sum of $3431.25 on the 1st day of April 1832, and the like sum and balance of said consideration money, to wit, $3431.25, on the 1st day of April 1833, the two last payments to bear interest at the rate of 3 per cent. per annum. The said John Schall, Jacob and Samuel Huntzinger, promise and agree to deliver to the said George Ludwick, his heirs and assigns, a deed in fee-simple, clear of all encumbrance, on the 1st day of July next, when the first payment is to be made, and the balance of the purchase money to be secured by bonds and mortgage, to be executed by the said George Ludwick, to the said John Schall, Jacob Huntzinger and Samuel Huntzinger, or their heirs or assigns. In witness whereof, &c."

Also a patent for 218 acres to the said Schall and others, dated 18th June 1830, reciting " that the said tract of land was surveyed in pursuance of a warrant dated 5th July 1751, granted to Francis Parvin and Benjamin Lightfoot, whose right in and to the said part, by virtue of sundry conveyances and other assurances in law, became vested in the said Samuel and Jacob Huntzinger, John Schall and Burd Patterson."

The Court rejected the foregoing papers and evidence, except the patent, which was allowed to be read; to which decision the defendant excepted, and the Court sealed a bill of exceptions.

The defendant requested the Court to charge the jury that the title of the plaintiff and his partners to the land sold by them to the defendant was defective, and that upon the said evidence they could legally find for the defendant; but the Court refused to give this instruction, and charged the jury that the plaintiff, upon the evidence in the cause, was entitled to a verdict for the whole amount of the condition of the bond, with 3 per cent. interest from the date, 1st July 1830, to the time of payment mentioned in the condition, 1st April 1832, and at 6 per cent. from the 1st of April 1832 to the 29th of April 1839; it being agreed that should this Court differ with them on the subject of interest, the plaintiff might release the excess.

The defendant excepted to the charge, and assigned the following errors:

1. The Court erred in the rejection of the offer of the defendant's evidence, mentioned in his bill of exceptions.

2. In charging the jury that the plaintiff was entitled to recover under the evidence given in the cause.

3. In charging the jury that the plaintiff was entitled to recover 6 per cent. interest from the time the bond became due and payable.

*J. M. Scott*, for the plaintiff in error, contended that if the title was defective, it was a defence to the bond notwithstanding a deed had been executed. *Steinhauer* v. *Witman*, (1 *S. & R.* 438); *Hart* v. *Porter*, (5 *S. & R.* 201); *Share* v. *Anderson*, (7 *S. & R.* 43); *Hessner* v. *Helm*, (8 *S. & R.* 178); *Stubbs* v. *King*, (14 *S. & R.* 206); *Christy* v. *Reynolds*, (16 *S. & R.* 258); *Lighty* v. *Shorb*, (3 *P. R.* 447). Here the Court rejected all the intermediate chain of title in which the defects existed, and which show that the recital in the patent was untrue. The deed to Green of the tract in the name of Lightfoot and Parvin, is bad for various reasons. It was not acknowledged till 1793, though dated in 1781. The Sheriff was not authorized by the Act of Assembly to make a deed: the commissioners were to sell and make the deed for a non-payment of state taxes on unseated lands.

*Mallery* here produced certified copies of the Acts of Assembly passed from time to time for levying taxes for the use of the province and state, viz., Act 27th November 1755; 30th May 1764; 20th March 1777, to raise supplies for the war; 3d April 1779, (under which this sale was made), authorizing in the 26th section the commissioners of the county to sell by public vendue, and directing that " when any sale shall be as aforesaid made by the Sheriff or Coroner, the Sheriff or Coroner shall make a deed which shall be valid :" meaning that the commissioners were to sell, but the Sheriff was to make the deed.

*Scott* contended that the Sheriff could only make a deed when he sold himself. It is now well known, as is said in *Morton* v. *Harris*, (9 *Watts* 322), that no tax title prior to the Act of 1815 is good. Under the Act of 1779, this title was bad, because the warrant was after the death of Parvin, and the Act of Assembly did not authorize that. The fact is shown by the will of Parvin, proved on the 3d of September 1769. Moreover, the Sheriff's deed to Green is for 300 acres in Brunswick township; but the deed from Green is for 218 acres in Manheim township.

By the Act of 1779, the sale must be advertised three months; yet it would seem by the words of the Sheriff's deed, that the warrant was issued on the 19th of October 1781, and the sale

[Ludwick v. Huntzinger.]

made on the 22d of October, which shows there could not be three months. The recitals in the deeds differ, and here began Green's fraud on Bushey by misreciting the deed. The Sheriff's deed could not convey any title of Parvin but what he held as tenant in common with Lightfoot, that is, a moiety; yet his deed affects to convey the whole tract. Nor are the tracts the same. The surveys show that the property conveyed to us by the plaintiffs is that set off to Elizabeth Lightfoot on the partition; whereas the property sold to Green is another adjoining tract in the name of Parvin and Lightfoot.

He also contended that the Court erred in allowing 6 per cent. interest.

*Mallery,* contra, was requested to speak only as to the identity of the tracts, and on the question of interest.

There is nothing on the face of the papers showing the tracts to be different. All the title papers and surveys go to show that this is the land held under the title. As to Elizabeth Lightfoot's tract, if it be the same, it was before that sold for taxes by the sheriff's deed, no matter in whose name it was assessed, whether owner, warrantee or stranger. If Elizabeth Lightfoot chose to take that tract, it was her own folly. It is the same land for which the heirs of Parvin brought ejectment at the instigation of the defendant, and failed. Nothing was offered below to show that it was not the tract in question. The whole uncertainty alleged appears by papers and surveys now produced. A total neglect to claim land for twenty years is an abandonment, though there be payment of the purchase money on a warrant and survey. *Foust* v. *Ross,* (1 *Watts & Serg.* 501).

As to interest, it has been held, that on a bond to pay 4 per cent. till certain legatees came of age, they were entitled to 7 per cent. after that time. 1 *Nott & M'Cord* 67.

The opinion of the Court was delivered by

KENNEDY, J.—This action was brought on a bond given by the plaintiff in error, who was the defendant in the court below, to the defendants in error, who were the plaintiffs there, to secure the payment of part of the purchase money of a tract of land sold and conveyed by the latter to the former. The defence set up was, that the plaintiffs below had no right or title whatever to the land so sold and conveyed. The only question raised in the case is, whether the evidence offered by the defendant in the court below, and rejected by the court, tended to prove and establish such a defence. If it did, then according to a train of decisions which we have on the subject, it ought to have been received by the court, and submitted to the jury. *Steinhauer* v. *Witman,* (1 *S. & R.* 438, 447); 9 *S. & R.* 161; *Hart* v. *Porter,* (5 *S. & R.* 204); *Carnahan* v. *Hall,* (*Add.* 127); *Lighty* v. *Shorb,* (3 *Penn. Rep.* 450,

V. — 8

451); *Share* v. *Anderson*, (7 *S. & R.* 43) ; *Fuhrman* v. *Loudon*, (13 *S. & R.* 386). But it is proper to remark and bear in mind, that the right of the plaintiffs below to demand and receive the amount of the obligation is a perfectly clear legal right, free from all doubt whatever; whereas the defence set up is, at most, only an equitable defence, and before it can prevail must be made out by evidence tending to prove it clearly and distinctly. The evidence must be such as will completely overcome that violent presumption which arises in favour of the plaintiff in error's having received a good title for the land from the defendants in error, from the circumstance of his having, after inspecting it, approved it, by accepting the deed conveying it to him, and thereupon given his bonds to them securing the payment of the balance of the purchase money. It is not sufficient, in such case, to offer or give evidence tending merely to show that the title which the purchaser has got is doubtful, or not merchantable, but he must show that it is positively bad, by proving a superior indisputable title to the land in a third person or party, who is asserting his right thereto by virtue of such title; otherwise it may be that the purchaser will never be disturbed in his enjoyment of the land by reason of it; or if he should, he may have his remedy on the covenants contained in the deed of conveyance made to him; and if it be that he has taken no covenant for that purpose, it goes strongly to show that he agreed and was satisfied to take the title of the vendor pretty much at his own risk. This he unquestionably had the right and power of doing, if he pleased; and if it should happen to turn out differently from what he expected, he has but little, if any reason, to blame the vendor for it. It may be said, with truth, that he bargained for the vendor's title merely such as it was, and that he obtained all he bargained for, even if he should afterwards lose the land by reason of a superior title to it in a third person. I do not wish, however, to be understood as saying that such superior title outstanding in a third person, when shown clearly to exist, and that he claims the land by virtue of it, will not be a good defence against the payment of a bond or bonds given for the purchase money, or any portion thereof, though a deed of conveyance has been executed by the vendor to the vendee; unless it was explicitly agreed and understood between them, at the time, that the vendee was to take the title of the vendor such as it was, whether bad or good, at his own risk: on the contrary, I admit, that according to the authorities first cited above, it will be a good defence. But I wish to be distinctly understood as laying down the principle, that in order to make such outstanding title a good defence, in such cases, it must be clearly shown to be indubitably good, and that the land is actually claimed under it. It is proper, however, to observe, that a different principle governs where the contract for the purchase of the land remains *in fieri,* and the action is brought on the contract itself with a view to enforce the

[Ludwick v. Huntzinger.]

payment of the purchase money according to its terms. There, if it should appear that the title of the vendor to the land is any-wise doubtful, the vendee will not be held bound to pay the purchase money for it; 5 *Binn.* 365; unless it should also appear that he had expressly agreed to do so. *Dorsey* v. *Jackman*, ( 1 S. & R. 42) ; *Pennsylvania* v. *Sims*, (*Add.* 9). But in the case under consideration, though it appears that articles of agreement were entered into, in the first instance, between the parties for the sale· and purchase of the land, yet they were subsequently carried into execution by the vendee's paying part of the purchase money and giving his bonds for the payment of the residue, and the vendor's executing and delivering to him a deed of conveyance for the land with a covenant of special warranty. By the articles " the defendants in error covenanted to deliver to the plaintiff in error, his heirs and assigns, a deed in fee-simple clear of all encum-brances," &c. It was said, in argument, on behalf of the plaintiff in error, that the articles of agreement still remained in force, notwithstanding the payment of part of the purchase money, and the giving of bonds by him for the residue thereof, and the execution and delivery of a deed conveying the land to him in fee-simple clear of all encumbrances, by the defendants in error. It appears to me, however, otherwise, for I am unable to discover anything contained in the articles, which was to be done and performed by either party, that has not been done; hence the articles can have no bearing whatever upon the case as it now stands. The articles contain no covenant upon the part of the vendors for further assurance, so that there is no ground for calling upon them to give to the vendee any other or further deed of conveyance or assu-rance than that which has been already received.

This being the state of the case, the question then presents itself, did the evidence offered by the plaintiff in error, and re-jected by the court, tend to show an outstanding title for the land in a third person, better than that which he received from the defendants in error, and that such third person was actually claim-ing the land under it? We think it very clear that it did not, and that it was therefore rightly rejected by the court. Indeed, I am inclined to think, that it is not even calculated to raise a doubt, as to the goodness of the title which the plaintiff in error received from the defendants. But it is said that it does not apply to, and embrace the land intended to be sold and purchased. The evi-dence, however, offered and rejected, does not tend, in the slight-est degree, to show that such was the fact, and therefore was not receivable for that purpose. Had evidence tending to prove that fact been offered in connection with the evidence that was rejected by the court, it might have raised a different question.

A question also arose, on the trial of this cause, as to the rate of interest that the plaintiffs were entitled to recover from the time that the bond became payable. It was dated the 1st of July

[Ludwick v. Huntzinger.]

1830, conditioned for the payment of $1143.75 on the 1st of April 1832, with three per cent. interest from the date thereof. The counsel of the defendant below contended that the plaintiffs, if entitled to recover at all, were only entitled to recover interest at the rate of 3 *per cent.*, as that was the rate agreed to be paid according to the terms of the bond from its date to the time thereby fixed for the payment of the principal. The court, however, advised the jury to give 3 *per cent.* interest on the principal mentioned in the condition of the bond, until it became payable, according to the tenor thereof; and 6 *per cent.* from that to the time of trial; which they accordingly did. In this the court were perfectly correct. Until the bond became payable the *agreement* of the parties regulated the allowance of interest, and the rate of it, but after that the *law* interposed, not only to allow, but to .regulate the rate of interest that should be paid by the defendant or debtor for and on account of his illegal detention of the debt from the plaintiffs.

Whenever one man binds himself to pay a specific sum of money to another by a certain day, and he fails to do so, he becomes liable, by the *law* of this State, to pay interest thereon at the rate of 6 *per cent. per annum,* afterwards, as long as he shall improperly withhold payment thereof, unless, perhaps, it should be expressly agreed otherwise by the parties. But the agreement of the parties here, in respect to the interest, extended no further than to the period fixed for the payment of the debt or principal; after that it was left to mere operation of law, which allows 6 *per cent.*

Judgment affirmed.