Nicholson, C. J.,
delivered a dissenting opinion, as follows:
The note sued on is dated at Holly Springs, Miss., payable to J. 0. Dougherty, who lives in Mississippi, and by him indorsed, and then by Montgomery, Forrest, and Over-ton, payable in Memphis, Team. Upon the face of the note it would be inferred that it was made in Mississippi, and payable in Tennessee, but the proof Montgomery, the only witness, is, that he had Alexander’s cotton in his possession as a commission merchant in Memphis, for sale, Alexander being a resident of Holly Springs, Miss., does not know where the note was written. It would seem that Alexander was in Memphis with the note, and agreed with Street & Oo., to sell the cotton -for the note, if Overton would indorse it. Witness procured Overton to indorse it, when it was delivered, and the sale of the cotton consummated. No explanation is given as to Dougherty being made the payee of the note, or where or when he indorsed it. As the paper was in Alexander’s possession, the reasonable.presumption is that he had agreed on the terms of sale with Street & Co., and as Alexander made the indorsement of Overton a condition precedent to the consummation of the contract, therefore the note was made payable to Dougherty in order that Overton might become his in-dorser, and as a subsequent indorser. As Dougherty lived in Mississippi, and there is no proof as to his being in Memphis, the inference is that he indorsed in Mississippi, and that either the note was drawn in Mississippi and indorsed by Dougherty before Street & Oo. signed it, or that it was drawn in Memphis, and signed by Street & Oo., and afterwards indorsed by Dougherty in Mississippi.
But how these matters are, the proof fails to explain. Nor is it essential that we should be relieved of the uncertainty as to the time and place when and where the note *684 was written, since the proof of Montgomery maíces it certain that it was a conditional contract between Alexander’ and Street & Co., and that it never became a complete and executed contract until the note was indorsed by Overton, and delivered by Street Co i o. to Alexander in payment for the cotton, and it is certain that the indorsement by Overton, and the delivery of the note, both took place in Memphis. It is said by Mr. Parsons, in Yol. 2, p. 22Y, of bis work on Hotes and Bills, that “the lex loci contractus depends not upon the place where the note or bill is made, drawn, or dated, btit upon the place where it is delivered from drawer to drawee, from promisor to payee., and from ■indorser to indorsee. It has been stated that a note is nothing until delivered, and that indorsement is not merely writing, hut transferring from the hands of one party to that of .the other.”
It was decided in Cook v. Moffat, 5 How., 295, that “notes drawn and dated at Baltimore, but delivered at Hew York, in payment of goods purchased there, are payable in and to be governed by the laws of Hew York.” In the present case it appears in the face of the note that it was dated at Holly Springs, Miss., hut where it was drawn does not appear other than being dated at Holly Springs. The presumption arises that it was drawn or written there —where it was signed by Street & Co. does not appear. But as Street & Co. lived in Memphis, and there is no proof that they were at any time at Holly Springs, it may be reasonably inferred that it was signed in Memphis, especially as it is clearly shown that Alexander was in Memphis when it was indorsed and delivered.
It further appears on the face of the note that it was payable in Memphis, and was to draw ten per cent, interest.
Upon this Hew of the facts under the decisions before referred to, the lex loci contractus was that of Tennessee,, and the note was to be governed by the law of Tennessee. As it was an illegal contract on its face, it could not be *685 enforced in -our courts, but it is said that the question whether it was a Mississippi or Tennessee contract was passed upon by the jury, and that this is conclusive. This depends, first, upon the question whether the charge of the court was correct and sufficient, and, secondly, whether the evidence supports the verdict.
The charge consists of several distinct legal propositions, all of which, except one, are correct, but so defective when viewed in connection with the proof that they would amount to reversible error but for the fact that the defendant seems to have acquiesced in them without requesting the court to be more specific in applying his instructions to the facts.
As to the sufficiency of the evidence to' support the finding that the note was a Mississippi contract, under our rule on the subject, we cannot reverse^, as the fact that the note bore date in Mississippi furnished prima facie evidence that it was a Mississippi contract. This is sufficient to support the verdict under the rule referred to-, although w© may think this presumption was overcome by the testimony, but the court instructed the jury that if they found for plaintiff they should allow ten per cent, interest, which was done. In this we are of opinion there was positive error. By the general law of Mississippi the legal rate of interest on override debts was six per cent. But by special statute, it is provided that “a contract may be made in writing for the payment of a rate of interest as great as ten per cent., etc., and that all judgments, decrees, founded on any contract shall bear interest after the rate- of the debt on -which such judgment or decree ivas rendered.”
The parties contracted with reference to this statute, and the purchaser of the cotton agreed in writing to- pay interest on the note from the 1st of March, 1860, the note being due and payable on the 1st of January, 1861. The plain, unambiguous language of the contract is, that the purchaser of the cotton will pay the amount specified in the note, on
*686 tile 1st of January, 1861, together with ten per cent, interest from March 1st, 1860. The contract as to interest was limited as to the time when the note became due. To hold that the note continued to draw ten per cent, after its maturity requires us to add to the written contract by implication, but this cannot be done because the statute requires the contract for ten per cent, to be in writing, and leaves nothing to implication. When a written contract is specific and unambiguous, as this is, there is no room for enlargement by a construction. If the note was not paid at maturity the general law furnished the measure of damages, which was sis per cent, per annum, and this should liare been the damages instead of ten per cent., as found by the jury, under the instructions of the court. This construction of the contract is sustained by the cases of Brewster v. Wakefield, 22 How., 127; McComber r. Dunham, 8 Wend., 550; U. S. Bank v. Chapin, 9 Wend., 471, and Ludwick v. Huntseiger, 5 Watts & Serg., 51-60. These cases were followed by the special commission at Hashrille, in 1873.
We are, therefore, of opinion that the court erred in the charge on this point, and for that error the judgment should be reversed.