[No. 3711.  Decided December 6, 1900.]

John S. Palmer, *Plaintiff,* Lillian M. O'Herin, *Respondent,* v. O. G. Laberee, *Appellant.*

23    409
f24     48
f24   486
23    409
26    421
23    409
38    628
23    409
e39   175
39    219
39    588
23    409
42    328

JUDGMENTS—REVIVAL—CONSTITUTIONALITY OF STATUTE.

It being apparent that the legislative intent in enacting the statute of March 6, 1897 (Laws 1897, p. 52) "relating to the duration of judgments and repealing §§ 462 and 463, volume 2, Hill's Code of Washington," was to deprive a judgment creditor of all remedy—either common law or statutory—in the matter of revival of judgments, and all the provisions of the act being connected together as a uniform piece of legislation on that one subject, the act must be construed as void *in toto,* as to existing judgment creditors, when one section thereof has been declared unconstitutional in so far as that class of creditors is concerned.

SAME.

Conceding that § 1 of the act of March 6, 1897, which provides that "After the expiration of six years from the rendition of any judgment it shall cease to be a lien or charge against the estate or person of the judgment debtor," is not open to objection on the same ground as the balance of the statute, because it deals with the judgment itself and not with the remedy to enforce its obligation, the section must be held unconstitutional on the ground that it destroys the obligation of existing contracts and amounts to legislative confiscation; and hence, where an action for revival of an existing judgment was brought within six years from date of rendition, no limitation is imposed upon the right to introduce the judgment in evidence, where the trial does not occur until the lapse of a greater period than six years after its rendition.

INTEREST—RATE ON JUDGMENTS—EFFECT OF CHANGE OF LAW.

Where a promissory note was executed drawing interest at the rate of one per cent. per month, without any provision therein for interest after maturity, and such note has been placed in judgment, without any recital as to the amount of interest it should draw, the judgment would draw interest at the legal rate specified by statute, and this rate would vary from time to time with any alterations in the legal rate made by statute.

SAME.

The provision in the interest laws of 1895 and 1899 (Laws 1895, p. 350, § 6; Laws 1899, p. 130, § 8) that nothing therein contained should be construed as affecting any contract or obligation made or entered into prior to the taking effect of the act, applies only to contracts and obligations between parties, and not to rights or obligations arising by operation of law.

Appeal from the Superior Court, Okanogan County.— Hon. CHARLES H. NEAL, Judge. Modified and Affirmed.

*Graves & Graves,* for appellant.

*Martin & Grant,* for respondent.

The opinion of the court was delivered by

WHITE, J.—Lillian M. O'Herin, the respondent herein, who claims title by bequest from John S. Palmer (who was the plaintiff and judgment creditor) to a judgment rendered in this cause in April, 1894, against the appellant, Laberee, and others, filed a motion to revive the judgment, proceeding under §§ 462, 463, 2 Hill's Code, relating to the revival of judgments. The appellant and the defendant Loudon were the only judgment debtors served with notice, and appellant alone appeared and defended. He interposed a demurrer, which was overruled, and then answered, putting in issue the ownership of the judgment and its existence as a demand against him. A trial was had, and an order was made reviving the judgment. From this order the appeal is taken.

The principal contention of appellant is: That proceedings to revive the judgment cannot be prosecuted because the statute providing for the revival of judgments has been repealed by the act of March 6, 1897, entitled "An act relating to the duration of judgments and repealing sections 462 and 463, volume 2, Hill's Code of Washington." Laws 1897, p. 52. That, though that act, as originally adopted, was obnoxious to constitutional provisions when applied to judgments founded upon contract obligations incurred prior to the passage of the act, the objection was obviated by the decision in *Bettman v. Cowley*, 19 Wash. 207 (53 Pac. 53, 40 L. R. A. 815), in which the act was construed, and one section declared unenforceable, and that that decision, in construing the act, entered into and became a part of it. That the remainder of the act, including the repealing clause, is valid, for the court held § 2 of the act, which forbade the prosecution of an action upon a judgment, unenforceable, because to enforce it would deprive the judgment creditor of all remedy; and, if that section is blotted from the act, in cases of this character, by that decision, then the judgment creditor has a remedy, for he may maintain his action upon the judgment as a common-law right. Appellant also contends that, though it be held that the effect of the decision in *Bettman v. Cowley, supra,* was that the judgment creditor could not be deprived of either of the remedies upon his judgment to which he was entitled when the contract was made, §§ 1 and 3 yet remain, are enforceable, and forbid the rendition of a judgment or order of revival when more than six years have elapsed since the rendition of the original judgment. The appellant cites many authorities to the effect that a law cannot be assailed by a pre-existing contract creditor merely because it makes a change in the remedy or remedies which he had when the contract

was made, nor because it takes away all such remedies, and substitutes another or others in their stead, if it leaves or gives to him a substantial remedy; that he cannot demand an absolute equivalent, but only a sufficient remedy. It may be conceded that this is the law. It must not be forgotten, however, that when the law in question (Laws 1897, p. 52) emanated from the legislature it left no remedy whatever. The appellant then reasons that, because the court, in passing on the act of 1897 in *Bettman v. Cowley, supra,* held that the legislature could not, as to pre-existing creditors, take away the common-law right of action on a judgment, as contemplated by § 2 of the act, therefore that right still remains, as if the legislature had never attempted to repeal it; and that, being a sufficient remedy, the act is valid as to pre-existing creditors so far as it expressly repeals §§ 462 and 463 of 2 Hill's Code. In other words, that the court, by interpretation of the statute, has preserved the common-law remedy, and therefore the same rule applies as if the legislature had expressly preserved that remedy, and repealed the statutory remedy. This is an ingenious argument, but it ignores the question which we think is decisive of this case. What object did the legislature intend to accomplish by the act of 1897? Two remedies then existed by which a creditor could renew a judgment; one by an action as at common law, the other by statutory proceedings. The legislature intended by the act to take away both these remedies, and to leave no remedy. As was said by Justice FIELD in the *Eureka Case,* 4 Sawy. 302:

"The inquiry, where any uncertainty exists, always is as to what the legislature intended; and, when that is ascertained, it controls."

Courts do not make the laws; they only interpret them

for the purpose of ascertaining the legislative intent and adjudging the effect thereof.

"The statute itself furnishes the best means of its. own exposition; and, if the intent of the act can be clearly ascertained from a reading of its provisions, and all its. parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction. The intention of an act will prevail over the literal sense of its terms." Sutherland, Statutory Construction, § 219.

The intent of the .act in question can be clearly ascertained from § 2; and, even if § 4 of the act, wherein §§ 462 and 463, 2 Hill's Code, were expressly repealed, was not in the act, it is plain by § 2 that not only suits. and actions, but all proceedings by which the lien or duration of judgments was to be continued, were abrogated. Section 2 reads: "No suit, action, or other proceedings shall ever be had on any judgment," etc. The method of reviving a judgment under the two sections cited from Hill's Code is a "proceeding," and falls within the purview of § 2 of the act of 1897. Courts cannot correct what they deem excesses in legislation; and where it is plain that the legislature intended to repeal all laws on a certain subject, and by apt language expressed that intention, courts cannot say that the intention was accomplished only to a limited extent.

"The certainty of the law is next in importance to its justice. And, if the legislature has expressed its intention in the law itself with certainty, it is not admissible to depart from that intention on any extraneous consideration or theory of construction." Sutherland, Statutory Construction, § 236.

All the provisions of this act are connected together as one uniform piece of legislation on one subject. It is plain that the legislature intended the act as a whole,

and that it was to be carried into effect as a whole. The act does not fall within that class where, at the time of the enactment, it is partly constitutional and partly unconstitutional, and the unconstitutional part may be stricken out, and that remaining may be enforced in accordance with the legislative intent, wholly independent of that which was rejected. Here the entire act as to a certain class of creditors was unconstitutional, it being the legislative intent that a judgment should not be extended or revived by any method. Because the court has declared this intent of no avail as to one remedy, we are asked to conclude that the legislative intent prevails as to the other remedy. That would make the legislative intent depend upon the decision of the court. This is an absurdity.

"The rule is that, if the invalid portions can be separated from the rest, and if, after their excision, there remains a complete, intelligible, and valid statute, capable of being executed, and conforming to the general purpose and intent of the legislature, as shown in the act, it will not be adjudged unconstitutional *in toto,* but sustained to that extent. * * * But when the parts of the statute are so mutually dependent and connected, as conditions, considerations, inducements, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." Black, Interpretation of Laws, p. 96.

The judgment sought to be revived was rendered April 10, 1894. On April 3, 1900, the motion to revive was served upon appellant. The case came on for trial in May, 1900. By his answer, appellant put in issue the existence of the judgment. To prove the issue, respond-

ent offered the judgment in evidence in May, 1900. It was received over appellant's objection that it was no longer a charge against him. This objection is based upon the wording of § 1 of the act of 1897, which is as follows:

"After the expiration of six years from the rendition of any judgment it shall cease to be a lien or charge against the estate or person of the judgment debtor."

The appellant contends that this section of the act, at least, is in force, and that one who sues upon a judgment or revives one must not only commence his action or proceeding within the six years, but must obtain his judgment or order of revival within that time; and that in this case, while the proceedings were commenced within the six years, the revival was not had until the six years had expired, and that the original judgment was improperly received in evidence to establish an existing liability when the judgment itself had ceased to be, and had become as so much waste paper. In commenting on this section, counsel for appellant says:

"It does not deal with the remedy to enforce an obligation, but with the obligation itself; declaring that upon the expiration of a certain period it shall cease to exist. Observe in limitation statutes the universal language. In all the provision is that 'actions can only be commenced,' or that 'actions must be commenced' within a certain period. But the commencement of actions is not referred to in this statute. It goes directly to the obligation itself, and destroys it."

It seems to us that, if the destruction of the remedy impairs the obligation of a contract, and is, therefore, unconstitutional, the destruction of the thing itself, to which the remedy is but an incident, is also unconstitutional. To say that a judgment shall not be a charge against the estate or person of the debtor destroys the

obligation, and amounts to legislative confiscation. In effect, it takes the property of the creditor, and gives it to the debtor without due process of law. Such legislation is obnoxious to all constitutional restriction, and should not be upheld. Section 3 is in the nature of a proviso to § 1, and should be read and considered as part of that section. The court, in *Bettman v. Cowley, supra,* quotes with approval from *Bronson v. Kinzie,* 1 How. 311, as follows:

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But, if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution."

This authority holds that it is immaterial whether the obligation of a contract is impaired by acting on the remedy or directly upon the contract. In either case it is prohibited by the constitution, and under this decision as to existing judgments growing out of contract §§ 1 and 3 must fall with the rest of the act. In *Bettman v. Cowley, supra,* the court also held that the act in question was not a statute of limitation, and this holding, it seems to us, disposes of the second question raised by the appellant. We think that the legislative intent as expressed in this act not only sought to destroy existing judgments, but the act was intended to deny any remedy whereby existing judgments could be extended, and that the act was intended as a whole, and to be carried into effect as such; and, that being the case, so far as it refers to contracts which were in existence at the time the law was enacted it is unconstitutional, and that the respondent had a right to revive his judgment under §§ 462 and 463, 2 Hill's Code, or by an action at common law, and to put in evidence the original judgment in the revival proceedings,

as if the act in question had never been passed by the legislature. Black, Interpretation of Laws, *supra*.

As to the amount for which the judgment was revived, we think proper exceptions were taken by the appellant to the first and second findings of fact, wherein the amount to be credited as payment on the original judgment and the amount of interest were found by the court below, and on these exceptions we can review such findings. On the 5th day of November, 1892, at Loomiston, in Okanogan county, Washington, O. G. Laberee and G. W. Loudon made, executed, and delivered to John S. Palmer their certain promissory note in writing, whereby they promised to pay John S. Palmer the sum of $6,000, with interest thereon from date at the rate of 1 per cent. per month. The original judgment was upon this note. The law in force when this contract was entered into as to interest on judgments was:

"Judgments shall bear the legal rate of interest from date thereof, except when rendered upon an express contract in writing wherein a different rate of interest is agreed upon by the parties, in which case the judgment shall, until paid and satisfied, bear the same rate of interest specified in such written contract." 2 Hill's Code, § 459.

"Revived judgments shall bear the same interest and be in all respects similar to original judgments as to lien and enforcement or collection." Id. § 463.

In 1893 the legislature enacted as follows (Laws 1893, p. 29):

"Section 1. The legal rate of interest shall be eight per cent. per annum."

"Sec. 4. Judgments shall bear the legal rate of interest from date of entry thereof.

"Sec. 5. All acts or parts of acts in conflict herewith are hereby repealed."

In 1895 the legislature enacted as follows (Laws 1895, p. 350):

"Sec. 4. Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in such contracts; provided, that said interest rate is set forth in the judgment; and all other judgments shall bear interest at the rate of seven per centum per annum from date of entry thereof."

Sec. 6. Nothing herein contained shall be construed as affecting any contract or obligation made or entered into prior to the taking effect of this act, nor the rate of interest provided by law for state, municipal or other public bonds."

In 1899 the legislature enacted as follows (Laws 1899, p. 129):

"Sec. 6. Judgments hereafter rendered founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in such contracts, not in any case, however, to exceed ten per cent. per annum; provided, that said interest rate is set forth in the judgment; and all other judgments shall bear interest at the rate of six per centum per annum from date of entry thereof."

"Sec. 8. Nothing herein contained shall be construed as affecting previous to entry of judgment thereon any contract or obligation made or entered into prior to the taking effect of this act."

Section 9 repeals the act of 1895, "provided, however, that the repeal thereof shall not affect any existing contract."

After allowing certain credits, of which we will speak further on, the court rendered judgment of revival in favor of respondent for the sum of $4,577 principal and $3,344.15 interest, being interest at the rate of 12 per cent. per annum from April 10, 1894, the date of the original judgment, until May 26, 1900, the date of

the judgment of revival. The original judgment is "that the plaintiff, John S. Palmer, do have and recover of and from the defendants, O. G. Laberee and G. W. Loudon, the sum of five thousand three hundred fifty-two and 12-100 dollars, together with the costs and disbursements incurred herein, taxed at $26.05, together with an attorney fee of $100.00." The respondent claims that the original judgment was on a note given November 5, 1892, due one year after date, bearing interest at 12 per cent. per annum until paid. The record fails to disclose any such state of facts, and discloses the facts to be as heretofore set out. It will be presumed that the note described was sued on after maturity. On the facts disclosed, this contract makes no provision for interest after default.

"There is considerable conflict of authority as to the rate of interest recoverable after maturity where the contract, though stipulating for interest and specifying a rate, makes no provision for interest after default in the payment of the principal sum when due." 16 Am. & Eng. Enc. Law (2d ed.) p. 1053, and cases cited.

"The preponderance of opinion is in favor of the doctrine that the stipulated rate attends the contract until it is satisfied or merged in judgment." *Jefferson County v. Lewis,* 20 Fla. 1009; *Pearce v. Hennessy,* 10 R. I. 226; *O'Brien v. Young,* 95 N. Y. 428 (47 Am. Rep. 64).

In the case of *Brewster v. Wakefield,* 22 How. 118, a case that arose under the statute of the territory of Minnesota which provided that "any rate of interest agreed upon by the parties in contract, specifying the same in writing, shall be legal and valid," and that, "when no rate of interest is agreed upon or specified in a note or other contract, seven per cent. per annum shall be the legal rate," the suit was upon two notes, in one of which interest was reserved at the rate of 25 per cent. per annum, and in the other at the rate of 2 per cent. a month.

The supreme court of the territory held that interest was payable on the notes at the stipulated rate after as well as before their maturity. In the supreme court of the United States this decision was reversed, and Chief Justice TANEY, in giving judgment, said:

"There is no stipulation in relation to interest, after the notes become due, in case the debtor should fail to pay them; and if the right to interest depended altogether on contract, and was not given by law, in a case of this kind, the appellee would be entitled to no interest whatever after the day of payment. The contract being entirely silent as to interest, if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law, and not by any provision of the contract."

The supreme court of the United States referred in support of its decision to the case of *Ludwick v. Huntzinger,* 5 Watts & S. 51, in which, the stipulated interest on a bond being less than the legal rate, interest was allowed subsequent to the maturity of the bond at the legal rate. The supreme court of Pennsylvania, in its opinion, said:

"Until the bond became payable, the agreement of the parties regulated the allowance of interest and the rate of it, but after that the law interposed, not only to allow, but to regulate, the rate of interest that should be paid by the defendant or debtor for and on account of his illegal detention of the debt from the plaintiffs."

The respondent claims that § 459, 2 Hill's Code, *supra,* entered into and became a part of the contract when the note was given, that being law relative to interest on judgments at the time; and that to deny interest at the rate mentioned in the note is to impair the obligation of the contract. It will be seen from *Brewster v. Wakefield, supra,* and *Ludwick v. Huntzinger, supra,* that where a note is entirely silent as to interest after it is due, the creditor

is entitled to interest by operation of law; and that until the note became payable the agreement of the parties regulated the allowance and the rate of interest, but after that the law interposed not only to allow, but to regulate, the rate of interest that should be allowed the creditor for and on account of the illegal detention of the debt. When the contract was entered into, the contracting parties knew that this rate was liable to be changed by the legislature, and must be considered as having contracted with knowledge of that fact. In 1 Sutherland, Damages, p. 544, it is said:

"A contract for the payment of money at a definite future time, with a stipulation for the payment of interest at a specified rate, stands, if not performed, after the date fixed for the payment of the principal, simply as a chose in action. The contract has then no future. The time has elapsed for performance. There remains but a right of action for damages. There is no continuing contract to pay interest in any other sense than there is a continuing contract to pay the principal. The promise was, as to both, to pay at a day which is past."

In the case of *Morley v. Lake Shore Ry. Co.,* 146 U. S. 168 (13 Sup. Ct. 56), the supreme court says:

"Interest on a principal sum may be stipulated for in the contract itself, either to run from the date of the contract until it matures, or until payment is made; and its payment in such a case is as much a part of the obligation of contract as the principal, and equally within the protection of the constitution. But if the contract itself does not provide for interest, then, of course, interest does not accrue during the running of the contract; and whether, after maturity, and a failure to pay, interest shall accrue, depends wholly on the law of the state, as declared by its statutes. If the state declares that, in case of the breach of a contract, interest shall accrue, such interest is in the nature of damages, and, as between the parties to the contract, such interest will continue to run until payment, or until the owner of the cause of action elects to merge

it into judgment. After the cause of action, whether a tort or a broken contract, not itself prescribing interest till payment, shall have been merged into a judgment, whether interest shall accrue upon the judgment is a matter not of contract between the parties, but of legislative discretion, which is free, so far as the constitution of the United States is concerned, to provide for interest as a penalty or liquidated damages for the nonpayment of the judgment, or not to do so. When such provision is made by statute, the owner of the judgment is, of course, entitled to the interest so prescribed until payment is received, or until the state shall, in the exercise of its discretion, declare that such interest shall be changed or cease to accrue. Should the statutory damages for nonpayment of a judgment be determined by a state, either in whole or in part, the owner of a judgment will be entitled to receive and have a vested right in the damages which shall have accrued up to the date of the legislative change; but after that time his rights as to interest as damages are, as when he first obtained his judgment, just what the legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive, and the defendant's obligation is to pay, as damages, just what the state chooses to prescribe."

"In the case of *Wyoming National Bank v. Brown,* 61 Pac. 465, the supreme court of Wyoming says:

"The contract has been merged in the judgment, or, as has been said, it has been extinguished by the judgment, which is a higher security. 'The liability of the debtor no longer rests upon his voluntary agreement, but upon the adjudication of the court into which the former has passed.' *McDonald v. Dickson,* 87 N. C. 404. A familiar principle will serve to clearly illustrate this. It is well settled that a judgment carries only such a rate of interest as may be established by law, notwithstanding that the contract or cause of action on which it was founded may bear a higher rate; and this is so because of the merger of the contract in the judgment, and thereafter the law, and not the parties, prescribes the interest."

In 1893, before the original judgment in this action was obtained, the legislature fixed the legal rate of interest at 8 per cent., and provided that judgments should bear the legal rate from the date of entry, and expressly repealed all acts in conflict. In 1895 the legislature declared that judgments founded upon written contracts should bear interest at the rate specified in such contracts, provided said interest rate was set forth in the judgment (in the case at bar no interest rate is set forth in the judgment), and all other judgments should bear interest at the rate of 7 per cent. There was also a provision in the act of 1895 that nothing therein contained should be construed as affecting any contract or obligation made or entered into prior to the taking effect of the act. This exception, in our opinion, applies only to contracts and obligations between the parties, and not to rights or obligations arising by operation of law. This same objection was made in the case of *O'Brien v. Young, supra.* In that case EARL, J., in delivering the opinion of the court, says:

"It is claimed that the provision in section 1 of the act of 1879, which reduced the rate of interest (chap. 538), saves this judgment from the operation of that act. The provision is that 'nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this act.' The answer to this claim is that here there was no contract to pay interest at any given rate. The implied contract, as I have shown, was to pay such interest as the law prescribed, and that contract is not affected or interfered with."

In *Morley v. Lake Shore Ry. Co., supra,* the court says:

"He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive, and the defendant's obligation is to pay, as damages, just what the state chooses to prescribe."

In 1899 the legislature declared that judgments founded upon written contracts providing for the payment of interest until paid at a specified rate should bear interest until paid at the rate specified, not exceeding 10 per cent., and that said rate should be set forth in the judgment. All other judgments should bear interest at the rate of 6 per cent. per annum from date of entry. A clause similar to the act of 1895, that the act should not be construed as affecting any contract or obligation made or entered into prior to the taking effect of the act, was included in this act, and it expressly repealed the law of 1895. The judgment in this case was rendered upon the 10th day of April, 1894. We think, from the authorities cited, which state, in our opinion, the law, that computation of interest should be as follows: 8 per cent. per annum on the amount due on the judgment after allowing credit for payments thereon from April 10, 1894, until the law of 1895 (Laws 1895, p. 349) went into effect, June 13, 1895; and from that time until the law of 1899 (Laws 1899, p. 128) went into effect, June 8, 1899, at the rate of 7 per cent. per annum; and from the time the Laws of 1899 went into effect until May 26, 1900, at the rate of 6 per cent. per annum. The amount of interest computed on this basis from April 10, 1894, to May 26, 1900, the date of the revived judgment, is $1,974.14, being $1,370.01 less than that awarded by the court below.

The record shows that the court revived the judgment for the sum of $4,577 as the principal of the judgment. The original judgment was for $5,352.12, and, in addition, an attorney's fee of $100, and costs amounting to $26.05. The sheriff sold property on execution on the original judgment for $928, and incurred $27.31

costs in so doing. After deducting the attorney fee, and all the costs, and giving credit for the balance realized by the sheriff, this leaves the sum of $4,577.48 as the principal of the judgment April 10, 1894. The error amounts to only 48 cents, and is against the respondent. The appellant has nothing to complain of in this respect. Inasmuch as the court below erred in allowing interest at 12 per cent. per annum on the revived judgment from April 10, 1894, it is ordered that the court below remit from the judgment on account of interest as of the date of May 26, 1900, the sum of $1,370.01. In all other respects the judgment of the court below is affirmed. The appellant to recover his costs on this appeal.

DUNBAR, C. J., and ANDERS, J., concur.