[No. 16336. *En Banc.* February 14, 1921.]

THE STATE OF WASHINGTON, *on the Relation of J. T. Ronald, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

COUNTIES (4)—CLASSIFICATION—STATUTES—CONSTRUCTION. Under Laws 1919, p. 154, § 1, fixing the salary of all superior court judges in the state at $4,500, with the proviso that judges in counties of the first class shall receive a salary of $5,000, judges in "class A" counties are not within the proviso, in view of Laws 1919, p. 490, § 1, declaring that counties of 210,000 population shall be known as "Class A" and of 125,000 to 210,000 as "first class" counties; since there is no ambiguity in the act or room to resort to construction.

Application filed in the supreme court January 25, 1921, for a writ of mandamus to secure the issuance of a state warrant. Denied.

*Preston, Thorgrimson & Turner,* for relator.

*The Attorney General* and *O. R. Schumann,* for respondent.

[1]Reported in 195 Pac. 1018.

TOLMAN, J.—Plaintiff, one of the judges of the superior court of the state of Washington for King county, on behalf of himself and the other judges of the same court for the same county, by an original action brought here, seeks a writ of mandate directed to the state auditor requiring him to issue to them warrants upon the state treasurer on the basis of five thousand dollars annual salary to each, alleging that all of such judges were duly and regularly elected at the general election of 1920 for four year terms beginning on the second Monday of January, 1921; that their salary is fixed by statute at five thousand dollars per annum, and that the defendant, claiming that such salaries are fixed at four thousand five hundred dollars per annum, has refused, and throughout the term will refuse, to issue warrants on the basis of five thousand dollars, or on any other basis than an annual salary of four thousand five hundred dollars for each.

We are thus called upon to construe chapter 77, of the Laws of 1919, which, so far as is here material, reads as follows:

"Each judge of the superior court shall receive an annual salary of four thousand five hundred dollars ($4,500.00): *Provided,* that in counties of the first class each judge of the superior court shall receive an annual salary of five thousand dollars ($5,000.00)." Laws of 1919, p. 154.

This language is clear and unequivocal, and it seems necessary to inquire only as to whether King county is a county of the first class. Prior to the act of 1917 (Laws 1917, Ch. 88, p. 327), King county was so classified, but that act provides:

"All counties having a population of over two hundred and fifty thousand (250,000) shall be known as Class 'A' counties."

This act was in effect at and before the time of the introduction and passage of Ch. 77 of the Laws of 1919; and at the same session and to take effect at the same time, the legislature passed a general act classifying all counties in the state and fixing the compensation of county officers (Laws 1919, Ch. 168, p. 490), which provides:

"Section 1.  For the purpose of regulating the compensation of county officers and for all other purposes herein provided for, the several counties of the state are hereby classified according to their population as follows:

"Counties containing a population of 210,000 or more shall belong to and be known as Class A Counties;

"Counties containing a population of 125,000, and under 210,000 shall belong to and be known as counties of the first class."

An able and somewhat persuasive argument is presented by the plaintiff which might be convincing were the language of the act in question ambiguous, equivocal, or subject to more than one construction; but here the legislative intent clearly appears from the language used, and to attempt by construction to change or vary its obvious meaning would be to usurp the functions of the legislature.  Manifestly, to make the proviso apply to class A counties, the actual words describing such counties must be read into it, and there is nothing in the act which in any wise justifies the argument that the legislature intended this should be done.  The law of statutory construction is too well settled to permit of such a course.

"In the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary signification.  It is a very well-settled rule that, so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or of public

policy; and it is the plain duty of the court to give it force and effect. But in obedience to the cardinal rule of ascertaining the intention of the legislature, if more than one significance may reasonably be attached to the language used, or a literal construction will make the act absurd, or will lead to injustice, the court may properly resort to construction.'' 36 Cyc. 1114.

It cannot be argued here that a literal construction will make the act absurd or lead to injustice, because we cannot assume that there was any good reason known to the legislature why judges in class A counties should receive more compensation than the judges in counties otherwise classified.

''A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless. In such a case arguments from the reason, spirit or purpose of the legislation, from the mischief it was intended to remedy, from history or analogy for the purpose of searching out and justifying the interpolation into the statute of new terms, and for the accomplishment of purposes which the lawmaking power did not express, are worse than futile. They serve only to raise doubt and uncertainty where none exist, to confuse and mislead the judgment, and to pervert the statute.'' 25 R.C.L. 957.

And again:

''The courts have no legislative powers, and in the interpretation and construction of statutes their sole

function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the legislature. They cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. If the true construction will be followed with harsh consequences, it cannot influence the courts in administering the law. The responsibility for the justice or wisdom of legislation rests with the legislature." 25 R.C.L. 963.

It seems useless to multiply authorities in support of the rule so clearly announced in the quotations just made; but among the cases holding to the rule are the following: *Cram v. Chicago, B. & Q. R. Co.,* 84 Neb. 607, 622, 122 N. W. 31, 26 L. R. A. (N.S.) 1022; *Tenant v. Kuhlemeier,* 19 Ann. Cas. 1026, and note following; *United States v. Ninety-nine Diamonds,* 139 Fed. 961; *Bate Refrigerating Co. v. Sulzberger,* 157 U. S. 1; *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216; *Bartlett v. Lanphier,* 94 Wash. 354, 162 Pac. 532.

The language of the act, "each judge of the superior court shall receive an annual salary of four thousand five hundred dollars ($4,500.00)," refers to every judge of the superior court in the state, except only as limited by the proviso that, "in counties of the first class each judge of the superior court shall receive an annual salary of five thousand dollars ($5,000.00)." Class A counties not being covered by the proviso, we are not called upon to construe the effect of the proviso or determine whether the legislature had any sufficient reason for distinguishing and differentiating as to the judges in counties of the first class, or if it had such reason whether it had the power to do so.

The writ will be denied.

PARKER, C. J., HOLCOMB, MACKINTOSH, BRIDGES, MAIN, and FULLERTON, JJ., concur.